## THE FARMERS & MERCHANTS' INSURANCE COMPANY

*v.*

## JOHN A. CHESNUT *et al.*

1. INSURANCE—*adjustment of loss, and a subsequent promise to pay—effect of.* Where an insurance company, upon a final adjustment of a loss, determine the amount and time of payment, which is accepted by the assured, whereupon the secretary of the company, over his signature as such, executes a writing in the words following: "Office of the Farmers & Merchants' Insurance Co., Quincy, Ill., March 11, 1867. Your proof of loss under policy No. 24,266, is at hand this p.m., and accepted, and will be payable at this office 90 days from this date," and delivered the same to the assured, and cotemporaneous with its execution and delivery, the secretary and general agent, in the presence of the president, verbally promised to pay him the amount agreed upon in 90 days, it was *held*, that this was a subsequent promise to pay a loss, the amount of which had been previously determined, and the verbal promise of the secretary and general agent, made in the presence of the president of the company, at the time of the execution and delivery of such writing, and their express or silent acquiescence, was evidence of their intention to so regard it.

2. SAME—*of a violation of a condition of the policy—its effect upon the promise.* A party omitted from his written application for insurance upon a building, a statement of the fact that there was a wooden building in close proximity to that sought to be insured, but, as he alleged, he afterwards, remembering the omission, went to the agent and stated the fact to him, verbally, and the agent replied, it would make no difference: *Held*, if this were true, the company could not defend, in case of loss, on the ground of the omission to state the fact in the application, although the policy should declare that it would be vitiated thereby.

| | |
|---|---|
| 50 | 111 |
| 21a | 635 |
| 26a | 501 |
| 50 | 111 |
| 29a | 604 |
| 50 | 111 |
| 133 | 228 |
| 50 | 111 |
| 136 | 201 |
| 35a | 111 |
| 50 | 111 |
| 149 | 329 |
| 149 | 522 |
| 50 | 111 |
| 60a | 221 |
| 50 | 111 |
| 75a | 570 |
| 50 | 111 |
| 175 | 291 |
| 50 | 111 |
| 82a | 270 |
| 50 | 111 |
| 89a | 2389 |

3. But whether the agent was informed of such omission or not, in the manner stated, a subsequent adjustment of the loss, and a promise to pay, with a knowledge of the facts, would be a waiver of all right of defense growing out of a violation of such condition.

4. Policy of insurance—*of the time of bringing suit.* A provision in the policy requiring suit to be brought within a year, would be waived if the company actually makes an adjustment of the loss, and a new contract to pay, upon which the assured relies.

5. Consideration—*for a promise—what sufficient.* In the compromise of disputed matters, the yielding of the claims of either party, with the view to effect a settlement, is a sufficient consideration to bind the parties to it.

6. So, where the assured signs the statement of loss at the amount the company were willing to pay, it being for a sum less than that claimed by him—no fraud appearing—he could not recover for a larger sum; and his agreement to take that sum is a sufficient consideration for the promise of the company to pay it.

7. `Agents—*of insurance companies—extent of their authority.* The authority of agents of insurance companies, in their relations with the public, is not controlled by the by-laws of the company, nor by the power contained in a private instrument of appointment, of which the public can have no knowledge, but by the nature and extent of the authority which the company itself holds out its agent as possessing.

8. So, although the charter of an insurance company provides that the affairs of the company shall be managed by a board of directors, who may appoint an executive committee, clothed with the full exercise of all the powers, yet, the president, secretary and general agent are the officers through whom the busi·ness of the company is done, and they are held out to the public as its representatives, and the precise scope of authority delegated to them, or to those acting under them, by virtue of a private instrument of writing defining such authority, and which is unknown to the public, cannot be received as the just limit of their authority, where by the acts of the company such agents are held out to the public as possessing powers greater than those defined in the instrument.


Appeal from the Circuit Court of Adams county; the Hon. Joseph Sibley, Judge, presiding.

The facts in this case are very fully presented in the opinion of the court.

Messrs. Skinner & Marsh, for the appellants.

The application for insurance is a plain, clear warranty, part of the contract of insurance, and its truth constitutes a condition precedent to the taking effect of the policy; or, in other words, if the description as to other buildings within the 100 feet, be shown untrue, not to disclose all of them, or not fully to answer the question relative to them, and affecting, in any possible view, the risk, the policy becomes void from the beginning. And it is immaterial whether the company knew of the existence of the other building or not, or, indeed, whether it did or did not, in a greater or less degree, increase the risk, because such is the written contract the parties have made; by it their rights are fixed, and no parol evidence or information can affect or vary the legal force of it.

Nor is it material whether not naming the other building was the result of accident or intention. By the contract the insured guaranteed that the application fully and truly set forth all the buildings within the 100 feet, and agreed that if it did not, the policy should be void, and by that contract only is the insurer bound.

The following cases fully sustain this position: 4 Hill, 188, 190 to 193; 2 Selden, 53; 18 N. Y. R. 373; 2 Denio, 75; 10 Barb. 285; 14 ib. 383; 6 Cush. 42; 7 Cush. 175; 3 Gray, 580; 1 Allen, 305; 7 Watts and Serg. 348; 1 Story's R. 57; 31 Maine, 219; 7 Gray, 364.

A mere promise to pay according to the terms of a written paper, or policy, void from the beginning, is *nudum pactum.*

If authority may be exercised by secretary or agent, without the sanction of the directors or executive committee, they are, in effect, the corporation, and the charter vesting the power in the directors and executive committee, is a dead letter. Power reposed by law in certain officers of a corporation, can alone be exercised by them—it cannot be delegated, because the law has determined the medium of its exercise. 7 Cow. 462, 464, 465; 12 Cush. 469, 471; 23 Penn. State R. 272; 24 ib. 320; 6 Cush. 42, 49.

A warranty in insurance cannot be affected by any parol evidence, or notice, and what is in writing by agreement of the parties, as in this case, cannot rest in parol, but if it could, notice to an agent not authorized to issue policies—make contracts of insurance—would not be notice to the company.

Messrs. Wheat & Marcy, for the appellees.

The adjustment, settlement, and promise to pay, was a new contract, governed by the general statute of limitations. The adjustment alone, without any express promise, would sustain an action upon an account stated. Angell on Insurance, sec. 361.

The object of the condition (to sue in 12 months,) is to hold the assured to reasonable diligence by suit, where his claim is disputed. The company cannot object to a want of diligence, induced by reliance in good faith upon its own unconditional assurance that the loss will be paid without controversy. As to waiver of this kind of condition, see *Grant* v. *Lexington Ins. Co.* 5 Ind. 23; *Ames* v. *N. Y. Union Ins. Co.* 14 N. Y. 254; *Stout* v. *City Fire Ins. Co.* 12 Iowa, 371; *Mayor &c. of New York* v. *Hamilton Fire Ins. Co.* 10 Bos. 537; *Peoria Ins. Co.* v. *Hall,* 12 Mich. 202; *Eagle Ins. Co.* v. *Lafayette Ins. Co.* 9 Ind. 443; *French* v. *Lafayette Ins. Co.* 5 McLean, 461.

An adjustment made with full knowledge of the facts, is binding, although such facts might have been a bar to the action before adjustment. 2 Phillips' Ins. chap. xxi, sec. 1,815; *Dow* v. *Smith,* 1 Caines' N. Y. 32.

Mr. Justice Lawrence delivered the opinion of the Court:

This suit was brought by the assignees in bankruptcy of one David Wigle, to recover the insurance effected upon a stock of goods. The fire occurred in February, 1867, and soon afterwards the company sent an agent to the locality to investigate the facts and determine the amount of loss. The agent estimated it

at $1,852.51, to which Wigle would not agree. Subsequently, Wigle went to Quincy, where the company did its business, and renewed his demand for payment. After considerable negotiation, Wigle agreed to take the amount above named, and the proof of loss was made out on that basis, and signed by Wigle. The company, through its secretary, then gave him the following paper:

W. N. Cline, President,      Capital,    $700,000.00.
H. M. Van Frank, V. Pres't,      Office of the
W. R. Van Frank, Secretary,      Farmers & Merchants'
Levi Coon, General Agent.      Insurance Co.,
                           Quincy, Ill., March 11, 1867.

D. Wigle, Esq.,
     West Point, Ill.

            Dear Sir : Your proof of loss under policy No. 24,266, is at hand this p. m., and accepted, and will be payable at this office 90 days from this date.
                 Truly,
                     W. R. Van Frank,
                         Secretary.

According to the testimony of Wigle, the company not only gave him this paper, but the secretary and general agent, in presence of the president of the company, verbally promised to pay him the amount agreed upon, in 90 days. They ultimately refused to pay, and this suit was brought.

The declaration contained four counts. A demurrer was sustained to the first, and it was not amended. The second and third counts were based upon the alleged settlement and promise to pay in 90 days, and the fourth was upon an account stated. The company, by way of defense, insists that Wigle, in his application for insurance, omitted to mention a wooden building which stood within a few feet of the building insured, and hence the policy, by its terms, was void. It also insists that suit was not brought within one year after the fire, as required by the terms of the policy, and that the so-called settlement was a mere adjustment of the amount of the loss, and

not a promise to pay, binding upon the company. It is urged that such a promise, if ever made, was without consideration, and that the officers alleged to have made it had no power thus to bind the company.

The jury, by their verdict, found the promise was made, and we cannot say this finding was against the evidence. Wigle, whose interest in the controversy had terminated by his bankruptcy, testified positively as to the promise. The secretary and general agent deny it, but the president, on his cross-examination, says, he "knew a certain sum had been fixed and agreed upon as the amount to be paid Wigle for his loss, and that Wigle agreed to take it." Wigle is further supported by the written memorandum furnished to him, as above set forth, and which seems to import something more than a mere adjustment of the amount of the loss. We must, therefore, take the special promise as proven.

Considering then, as we must, that promise to have been made, what effect is to be given to the fact that no mention was made of the wooden building in the application for the insurance. Wigle testifies that after he had signed the written application, he remembered he had made no mention of the wooden building, and went back and told Coon, the agent, about it, and that Coon replied, it would make no difference. This is denied by Coon. If true, the company could not defend an action on the policy upon this ground. *Atlantic Ins. Co.* v. *Wright*, 22 Ill. 474. But whether true or not, the agent of the company was fully advised of the existence of this wooden building before the settlement and promise were made, and even the instructions asked by counsel for the company assume, if such a promise was made, with a knowledge of all the facts, and if the promise was, in other respects, binding, it would be a waiver of all right of defense growing out of this cause. In conceding this, the instructions for the defendant did not concede too much. If the new promise was made by the company upon a sufficient consideration, and with full knowledge of all the facts, it was sufficient, of itself,

to fix their liability.  *Dow* v. *Smith*, 1 Caines, 32; 2 Phillips on Ins. sec. 1,815.

The same is true in regard to the provision of the policy requiring suit to be brought within a year.  It was held, in *Peoria Marine & Fire Ins. Co.* v. *Whitehill*, 25 Ill. 475, that such a provision in the policy was binding, but would be waived if the company deterred the assured from bringing suit, by holding out reasonable hopes of an adjustment.  *A fortiori* would it be waived, if the company actually makes an adjustment and a new contract to pay, upon which the party relies.  This suit is not upon the policy, but upon the new promise, and as to that, the stipulation in the policy has no application.

The case, then, is narrowed down to the validity of the new promise, which the jury found was made.  It was not a *nude pact*, because Wigle claimed that his policy covered certain boots, shoes and clothing, that were destroyed by the fire. This was denied by the company.  The question was not free from doubt, but Wigle, for the sake of a settlement, agreed to forego this claim and accept the amount the company was willing to pay.  This appears both by his own testimony and that of the president, and upon the familiar principle applicable to the compromise of disputed claims, was binding upon the parties as a mutual settlement, so far as depended upon the question of consideration.  After signing the statement of loss at the amount agreed upon, without fraud, Wigle could not have recovered a larger sum, and his agreement to take that sum was a sufficient consideration for the promise of the company to pay it.

But, it is said, if the special contract was made, the officers making it were acting beyond their power, and certain sections of the charter were read in evidence, providing that the affairs of the company shall be managed by a board of directors, who may appoint an executive committee, which, when the board is not in session, may exercise all the powers of the company, unless forbidden by its by-laws.  In this case, Wigle

had come to Quincy, where the chief office of the company was situated, for the purpose of finally adjusting his loss. He there makes a settlement with the secretary and general agent, in the presence of the president, and with his silent acquiescence.  These are the officers through whom the business of the company is done.  They are held out to the public as its representatives.  The policies are executed by them.  The official designation of one of them is "general agent," and in that capacity he is advertised by the company to the world.  We had occasion, in the case of *The N. E. Fire & Marine Ins. Co.* v. *Schettler*, 38 Ill. 170, to comment on the attempt, not unfrequently made by these companies, to escape their liabilities by denying the authority of their agents, and we here repeat what was, in substance, there said, that the question in these cases is, simply, what power does the company hold out its agents to the public as possessing?  In this case, the company read in evidence the written appointment of the agent, Coon, defining his authority.  But what mattered it to the public, what powers were granted to him by a private instrument of which they had, and could have, no knowledge? Under the clauses of the charter above quoted, the board of directors, or the executive committee, had power to appoint an agent and other officers, who should transact the regular business of the company, which would necessarily include the settlement of losses.  This is a part of the routine business to be transacted whenever a loss occurs, and to whom could the public look for its transaction but to those officers and agents whose names appear upon the instruments issued by the company, and who represent it to the world?  The public knows nothing of the executive committee.  In this case, Wigle testifies he was told the committee were to meet, but he was not brought in contact with them.  Subsequently, however, to the time when they were to meet, the settlement was made by the officers.  The committee thus permitted the officers to act . for them, and Wigle had a right to believe they had the requisite power.  He acted on that belief himself, by reducing the

written statement of his loss to a sum which they were willing and agreed to pay, and the company cannot now repudiate the transaction. It was a transaction of such character as necessarily to fall within the general business of the company, and it was conducted with those officers to whom such business is necessarily entrusted, and who are the only persons to whom policy holders can resort for a settlement of their claims.

Objections are taken to the instructions given and refused, but it is unnecessary to discuss them in detail, as they presented the case to the jury in substantial accordance with the views we have here expressed. Special complaint is made of the modification, by the court, of the sixth instruction asked by the defendant, but without just cause. The instruction, as asked, was to the effect, that the letter read in evidence and signed by Van Frank, did not, of itself, amount to a valid promise to pay a sum of money, which the court qualified by adding the following clause: " unless the jury believe from the evidence that he had authority to write the same." It is objected to the qualification, not that it lays down an erroneous legal principle, but that, in this case, it tended to mislead, because Van Frank, not regarding the letter as a promise to pay, but merely as an acknowledgment of the receipt of proof of loss, had testified he had authority to write the letter, and it is urged that the jury, applying the instruction to Van Frank's assertion of authority, would be obliged to find for the plaintiff. The answer to this objection is, that the letter is, upon its face, something more than a mere receipt of proof of loss. It is a promise to pay in 90 days, and if made by the authority of the company, would be binding, as stated by the court. If the witness sought to give the letter a narrower meaning than it bore upon its face, and assert his authority to write it, while denying, as he did, that he had authority to promise to pay money, it would be for the jury to give to each part of his evidence such weight as it might deserve. There was, at least, no error in the instruction. But, in view of all the evidence and instructions, it is clear the jury found their

verdict upon the belief that there had been a complete settlement with the officers of the company, and that this letter was written in pursuance and by the authority of such settlement, and in this finding we concur.

We are of opinion the case was rightly decided, and the judgment must be affirmed.

*Judgment affirmed.*