# William A. Gray v. Merchants Insurance Company of Newark, New Jersey.

### Gen. No. 4,304.

1. REFORMATION—*power of court of chancery to grant.* A court of chancery has power to correct a mistake in a written contract where such mistake is one of fact and was mutual between the parties to the instrument, and for that purpose parol evidence is competent.

2. REFORMATION—*quantum of evidence essential to obtain.* In order to obtain a reformation, it is essential that the evidence be clear and convincing.

3. AGENT—*how far acts of, bind principal.* The acts of an agent within the general scope of his authority are binding upon his principal, even where such agent acts contrary to his instructions.

4. PROOFS OF LOSS—*when, not essential.* The filing of proofs of loss with an insurance company is not essential to a recovery for such loss where their filing has been expressly waived.

Proceeding to reform insurance policy, and for other relief. Appeal from the Circuit Court of Peoria County; the Hon. NICHOLAS E. WORTHINGTON, Judge, presiding. Heard in this court at the October term, 1903. Reversed and remanded. Opinion filed March 14, 1904. Opinion modified and rehearing denied April 28, 1904.

JAMES A. CAMERON and SHEEN & MILLER, for appellant.

McCULLOCH & McCULLOCH, for appellee.

MR. JUSTICE FARMER delivered the opinion of the court.

Appellee, a fire insurance company, was doing business in the city of Peoria, through different agents at different times. At one time its agents were S. N. Kinney & Son, A. N. Kinney, later A. N. Kinney and W. T. Furst, and still later W. T. Furst alone. Appellant, William A. Gray, was the owner of certain business and office properties in the city of Peoria, which he kept insured through these agencies. He also insured through the same agents, the rentals of his business property. His policies were not always with appellee. He appears to have informed the agents through whom he caused the property to be insured of the amount of insurance he wished to carry, and the

character of policy, but left the selection of the company that should write the insurance to the agents, they having other companies besides the appellee. The appellee company issued two forms of policies—one known as the long form, or co-insurance policy, and the other as the short form, or form without co-insurance. The former contained a provision that in case of fire the company would not be liable for more than the proportion the sum insured bore to the actual value or rental of the premises at the time of the fire. The latter contained no such provision. November 15, 1900, appellee, through its agent, W. T. Furst, delivered to appellant a policy insuring the rentals of a three-story building called the "Auditorium," for one year for $2,000, at a premium of $30. This policy contained the co-insurance clause. In May, 1901, and while the policy was in force, the building was destroyed by fire so as to render it untenantable. Appellant also carried other insurance in appellee on this building which was adjusted and paid, but it refused to pay the full amount of the rental policy, and denied liability for anything more than was provided for in the co-insurance clause. Appellant claims not to have known his policy was of that kind until after the fire; that he asked that the short form policy should always be written on all his property, which appellee's agents agreed to do, and that relying upon such agreement, he accepted the policy and did not examine it, and was unaware that it was not of the kind he desired and claims he contracted for, until after the fire. The insurance company refusing to settle on any other basis than in accordance with the co-insurance clause in the policy, appellant filed a bill in the Circuit Court of Peoria County, praying a reform of the policy on the ground that the insurance of the policy containing the co-insurance clause was the mutual mistake of appellee's agents and appellant, the intention of both parties being that the policy should not contain the co-insurance clause, and also praying that the court ascertain and determine the amount appellee justly owed appellant, on account of the loss by fire, and decree that the same be paid

within some time to be fixed by the court. Appellee answered the bill, denying the material allegations thereof, and that appellant was entitled to the relief asked. After answer filed, the cause was referred to the master in chancery to hear the proof and report the same, together with his conclusions, to the court. After hearing the evidence, the master found the policy sought to be reformed, constituted the contract between the complainant and defendant; that the long form clause was not inserted or allowed to remain in the policy by mutual mistake of appellee's agent and complainant, but that the policy issued was in form and substance the one intended to be issued by defendant, that it never intended to issue a policy with the short form clause, and that complainant was not entitled to the relief prayed for in his bill. Objections were filed before the master to this report, who overruled them and filed his report and conclusions in the Circuit Court. Complainant filed the same objections made before the master in the Circuit Court, as exceptions to said report. The Circuit Court overruled the exceptions, sustained the conclusions of the master in chancery, and dismissed complainant's bill for want of equity, at complainant's costs. From this decree complainant appeals.

It appears from the evidence that appellant first insured the rentals of his property through the agency of S. N. Kinney & Son, in the year 1897. That policy contained the co-insurance clause. Appellant testifies he was then not familiar with the different forms of policies, but his attention having been called to it, when the policy expired he notified the agents that he would not insure under that form of policy any more. There was considerable difference in the premium required under the different forms of policy, the rate being much higher under the policy without the co-insurance clause, or short form policy, and it appears appellant wanted the latter form of policy at the rate of premium charged for the long form. He testifies that appellee's agents agreed to try and procure him the kind of policy he wished, at the premium charged for the

long form, and wrote him a policy in appellee company, for $2,000 at a $30 premium, without the co-insurance clause; but this policy was not accepted by appellee, was cancelled, and another written by said agents in the "Under-writers" at the same premium, without the co-insurance clause. After this policy expired he was insured in appellee company and nothing further was said between the parties about the form of policy after that time. Appellant testified, and in this was corroborated by both Kinney and Furst, that he had previously notified appellee's agents he would not accept policies containing the co-insurance clause, and told them "When I insure, I want dollar for dollar when there is loss." Appellant owned considerable property in the city of Peoria, which he kept insured, and between the time he notified appellee's agents that he would not accept any more long form policies, and before writing the policy in controversy, Kinney & Son, Kinney & Furst, and W. T. Furst, as agents of appellee as well as other companies, wrote a number of policies for him, some of which were in the appellee company, and as we understand the evidence, none of them, prior to the writing of the policy sought to be reformed in this case, contained the co-insurance clause.

The evidence shows that there was in the city of Peoria what was known as an inspector or compact manager, to whom all insurance in a certain class of companies, which included appellee, was required to be reported by the agents for approval. The purpose of maintaining this office and manager was to prevent any of the companies or agencies in the combine from cutting rates and issuing policies for lower premiums than had been established by said companies, and to keep the rates of insurance uniform. The manager of this office, after approving or disapproving the report, would forward it to the company proposing to write the insurance. It was also the rule and custom of the agents of appellee, according to their testimony, to make daily reports direct to its office in Chicago, and A. N. Kinney testifies that this was done in the case of all policies

issued to appellant by appellee while he was acting as its agent and until he ceased working for it in connection with Mr. Furst, in the spring of 1901. He further testifies that the instructions from appellant were to keep his insurance in force by renewing policies as fast as the old ones expired and that this they did, and usually delivered the renewal policies just shortly prior to the expiration of the old ones without further request or talk with the appellant about the matter. According to his testimony and that of Furst, appellant was getting his insurance without the co-insurance clause, at the rate fixed for insurance with that clause, and Furst testifies that to avoid this fact becoming known to the manager of the compact office, they adopted the plan of making a report to him that the insurance policy was to contain the co-insurance clause, while reporting it to the company as straight insurance, but that this was not known to appellant. The special terms which distinguished one form of policy from the other, were printed or typewritten on slips of paper and attached to the policy, and Mr. Furst testifies he sent one of these slips, containing the co-insurance clause, with his report of the policy in controversy, to Mr. Ticknor, the manager of the compact office, and intended to report to the Chicago office, direct, the policy as a straight or short form policy as was the custom, but by some oversight failed to make such report. He further testifies that by inadvertence he attached the long form clause to the policy and delivered it to appellant; that he did not intend to do this, but intended to give appellant a policy known as the short form, covering the whole loss in case of fire, and that the reason for reporting one kind of policy to Mr. Ticknor, and issuing another kind to the insured, was because the policies were being issued at the rate of premium fixed by the combine, for the long form policy. It appears that the only report of this policy which reached the appellee's office in Chicago, was that made by Ticknor, and from this it appeared to be a long form or co insurance policy. Appellee denied its agents had any authority to issue short form policies, and claims that it

was contrary to its rule and custom to do so, and that whenever it had knowledge of such policies being written, they were cancelled.

That there was an agreement and understanding between appellant and the agents of appellee, that all appellant's policies were to be of the short form, and that he would not accept any other kind, is to our minds established by the evidence. It is testified to by appellant, A. N. Kinney and Furst, and not contradicted, unless it can be said to be done by circumstances proven on the trial. A. N. Kinney testified this arrangement existed between appellant and his father and himself as agents for appellee before Furst became connected with the agency, and that when Furst did so become connected with the agency, witness informed him of the nature and character of appellant's business they were doing, and of the arrangements and agreements that existed between them and appellant, as to the character of insurance they were to write for him, and the manner and method of doing his business; so that we are of opinion the proof shows that an agreement did exist between appellee's agents and appellant, that all policies written for him should be what is known as short form policies. The strongest circumstance in opposition to this testimony proven by appellee, was the introduction of a number of reports received at the company's office in Chicago, through the compact manager, showing long form insurance written for appellant. In view of the testimony of the witnesses as to the method of doing business and making reports, we think this cannot be said to overcome the direct and positive testimony of witnesses who knew the facts.

It cannot be denied that a court of chancery has the power to correct a mistake in a written contract where the mistake is one of fact, and is mutual between the parties to the instrument, and for that purpose parol evidence may be heard. Hunter, administrator, v. Bilyeu, et al., 30 Ill. 228; Way v. Roth, 159 Ill. 162; Keith v. Globe Ins. Co., 52 Ill. 518; Home Ins. Co. of Texas v. Myer, 93 Ill. 271; German Fire Ins. Co. v. Gueck, et al., 130 Ill. 345. It will be

observed that three of the cases here cited, involve the reformation and correction of mistakes in policies of insurance. In two of them the mistake related to the description or the property, in the other one the alleged mistake related to the name of the owner, and in all of them it was held that a mutual mistake between the parties to the contract or policy may be reformed and corrected in accordance with what was actually intended by the parties. True, the evidence must be clear and convincing in order to authorize the court to grant relief in such cases, but to our minds the testimony in this case meets all these requirements. It is insisted by appellee that the Kinneys and Furst, in their dealings with appellant, were not the agents of appellee but represented and acted for appellant. This position is not sustained by the evidence. A. N. Kinney and Furst testified they were agents and acting for appellee in their dealings with appellant, and it abundantly appears that they acted as agents of appellee and were so recognized by it, writing insurance, collecting premiums, and making reports. Moreover, it is admitted in the answer of appellee that during the years 1899, 1900, 1901, S. N. Kinney and W. T. Furst were its agents in Peoria through which it did business. Appellee was bound by the acts of its agents in its transactions with appellant whether said agents acted contrary to instructions or not. Appellant had no knowledge of their exceeding their authority and if they did so, appellee's remedy must be against its agents if any one. Continental Ins. Co. v. Ruckman, 137 Ill. 364; St. Paul F. & M. Ins. Co. v. Wells, 89 Ill. 82; Germania Fire Ins. Co. v. McKee, 94 Ill. 494; N. E. Fire & M. Ins. Co. v. Schettler, 38 Ill. 166.

It is seriously insisted by appellee, that, as appellant made no proofs of loss within sixty days after the fire as required by the policy, he is barred from maintaining an action to recover thereon, or to reform the policy. The clause in the policy referred to, is as follows: " Within sixty days after the fire, unless such time is extended in writing by this company, the insured shall render a statement to

this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire, the interest of the insured and all others in the property, the cash value of each item thereof, and the amount of loss thereon—by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of the fire—and no suit or action on this policy for a recovery of any claim shall be sustainable in any court of law or equity, until after full compliance with all the foregoing requirements." The facts with respect to this matter are, that appellee had another policy of insurance on this same building, and after the fire sent an adjuster to make settlement with appellant. The loss on the building was satisfactorily adjusted and the policy paid, but when it came to adjusting the loss under the rentals policy, which is the one in controversy in this suit, appellee proposed to settle it in accordance with the written provisions of the policy, whereas appellant claimed that the co-insurance clause was inserted in the policy by mistake and insisted the loss be adjusted on the basis of the straight insurance policy without the co-insurance clause. Guntram Mueller, an adjuster for appellee, but who, as we understand the evidence, was not the one who adjusted and settled the loss on the building, called on appellant May 22, to adjust and settle the loss under the policy in controversy. They were unable to agree and Mueller proposed that they submit the question to the same arbitrators who had acted in that capacity in adjusting the loss on the building, which was agreed to by appellant. This was in the presence of William S. Kellogg, who was acting as attorney for appellant, and when Mueller presented the papers for appellant to sign, submitting the matter to the arbitrators named, appellant handed them to his attorney, who, as Mueller testifies, read the paper over and asked whether "the company would insist on receiving notice of the loss in writing as the policy provided for. I told him we would not, for the simple reason the agent had already notified the company of the loss, and there-

fore it .was not necessary to file another notice in writing, for the loss had occurred just before signing up. I attached my signature, and Mr. Gray his, and he said : 'What about the proof of loss in this matter?' I merely said that was something that we had not got at, as we had to find out the number of days required to replace the building; nor had I time to know what the rents were during the previous year, both of which were necessary to arrive at the loss; and the documents were signed. Mr. Gray took one and I another." It was pending the discussion as to what the annual rentals of the building were, that Mueller noticed the co-insurance clause in the policy and insisted that the loss should be adjusted strictly in accordance with the terms of the policy. Appellant insisted that the loss be adjusted without regard to the co-insurance clause. No settlement was made at that time and Mueller left the city. It appears the award of the appraisers appointed by the parties fixed the time within which it would be required to rebuild the premises but did not determine the amount of the annual rentals. As stated in appellee's brief, "After considerable correspondence relative to a compromise, which had proved unavailing," Mueller wrote appellant July 3, acknowledging receipt of a letter from him, dated July 2, stating the amount he would accept in settlement of his policy. In this letter Mueller did not say whether the company would accept or refuse the offer, but after the acknowledgment of the receipt of it; stated : "As yet you have not made claim on this company in accordance with the requirement as set forth in the printed conditions of the policy under which you make claim, and we are therefore not in the position to entertain the proposition. The company have not and will not waive any or part of any of the requirements of the printed conditions of the policy, as set forth in lines number sixty-nine to one hundred twelve inclusive, and will insist upon your strictly complying with all their requirements." It will be seen that this letter bears date just three days previous to the expiration of the sixty days limited in the policy for mak-

ing proofs of loss.    It was written by the same man who testified that when in Peoria, May 22, he had expressly stated to appellant and his attorney, they need not make these proofs of loss.    So far as we are able to discover from this record, appellant accepted this assurance of appellee's adjuster, and relied on it, and had no notice or intimation that these proofs would be required, until just as the time fixed for making them by the terms of the policy, was about to expire.    In the interval between the visit of Mueller to appellant in Peoria, and the writing of this letter, there appear to have been efforts made to compromise the dispute between the parties, and no question of proofs of loss being raised, this would naturally lead appellant to believe that they were waived and not required.  Under these circumstances we are of opinion appellee cannot now be heard to set up this clause of the policy as a bar to the maintenance of the action thereon.    Home Ins. Co. of Texas v. Myer, *supra;* Allemania Fire Ins. Co. v. Peck, 133 Ill. 220; Conductors' Benefit Association v. Loomis, 142 Ill. 560; Phoenix Ins. Co. v. Belt Ry. Co., 182 Ill. 33.    In addition to the foregoing the testimony of Gray and Kellogg established both an express waiver of proofs of loss, and such conduct as justified Gray in believing proofs of loss would not be required.

We are of opinion appellant under the testimony was entitled to the relief prayed, and the decree of the Circuit Court is therefore reversed and the cause remanded to that court for further proceedings in harmony with the views herein expressed.

*Reversed and remanded.*