**LUMBERMEN'S MUT. INS. CO. v. SLIDE RULE & SCALE ENGINEERING CO.**

**SLIDE RULE & SCALE ENGINEERING CO. (GENERAL CREDIT CO., Intervener) v. FIREMEN'S FUND INS. CO.**

**SLIDE RULE & SCALE ENGINEERING CO. (GENERAL CREDIT CO., Intervener) v. CITIZENS INS. CO. OF NEW JERSEY.**

**LUMBERMEN'S MUT. INS. CO. v. SLIDE RULE & SCALE ENGINEERING CO. (GENERAL CREDIT CORPORATION, Intervener, et al.).**

Nos. 9775–9777.

United States Court of Appeals
Seventh Circuit.

Oct. 18, 1949.

As Modified on Denial of Rehearing
Nov. 17, 1949.

Carl H. Lambach, Margaret Stevenson, Davenport, Iowa, Marks Alexander, Springfield, Ill., for Slide Rule & Scale Engineering Co. and General Credit Corporation.

Hayes McKinney, Charles F. Hough, C. Oscar Carlson, Chicago, Ill., Clayton J. Barber Springfield, Ill., for Firemen's Fund Ins. Co.

Clarence G. Myers, Charles F. Snerly, J. Eugene Loeb, Chicago, Ill., Alfred F. Newkirk, Springfield, Ill., Counsel for Citizens Ins. Co. of New Jersey.

Myers & Snerly and McKinney, Hough & Carlson, Chicago, Ill., Giffin, Winning, Lindner, Newkirk & Jones and Barber & Barber, Springfield, Ill., of counsel for appellants.

Louis F. Gillespie, Frank W. Young, Springfield, Ill., for Lumbermen's Mut. Ins. Co., Gillespie, Burke & Gillespie and Frederick H. Stone, Springfield, Ill., of counsel.

Before DUFFY and FINNEGAN, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

These three appeals grow out of a trial in the District Court wherein the controverted issue was whether Firemen's Fund Insurance Company, Citizens Insurance Company of New Jersey and Lumbermen's Mutual Insurance Company, hereinafter referred to, respectively, as Firemen, Citizens and Lumbermen, were liable as insurers to Slide Rule & Scale Engineering Company and its financial associate, General Credit Corporation, hereinafter termed, respectively, Slide Rule and General Credit, upon an alleged parol contract of insurance covering Slide Rule's inventory of goods, which, valued at $74,574.05, were destroyed by fire on February 8, 1947.

The District Court found that a valid parol contract of insurance had been made; that Lumbermen, Firemen and Citizens, as well as another, the Iowa Mutual Insurance Company, were bound thereby; that the

latter named company had recognized its liability and settled its share of the loss; that by the act of Collins, the common agent of Lumbermen, Firemen and Citizens, the contracted liability of Lumbermen had been validly transferred to Citizens and Firemen and that they had succeeded to its liability to the extent of one-third of the total value of the destroyed property each. Judgment was accordingly rendered against Citizens and Firemen for their said respective liabilities from which they have appealed.

Citizens and Firemen contend that the court erred in holding them bound by a valid contract of insurance and, in the alternative, that, if this court should affirm the judgment declaring them liable, it should likewise hold Lumbermen liable and enter judgment against it instead of them. Slide Rule does not complain of the failure of the District Court to enter judgment against Lumbermen, which the court found liable in so far as the insured is concerned, except that it says, in the alternative, that if this court should discharge Firemen and Citizens, it should then hold Lumbermen. Lumbermen contends that the court erred in concluding that any one of the companies was bound by any parol contract and, in the alternative, that, if Firemen and Citizens are held bound by such contract, then the District Court was right in holding that their liability had been validly substituted for Lumbermen's.

The District Court found that Edward Collins, an insurance agent duly licensed under the laws of Illinois, was at all times agent for the several companies; that, as such agent, he was authorized to solicit, receive and accept proposals for insurance, issue binders and issue and countersign policies; that from time to time he had issued policies in behalf of the companies and that he had previously written policies covering fire liability insurance for Slide Rule in the companies he represented.

The court found, further, that, for some time prior to December 27, 1946, Collins had solicited from Slide Rule, purchase of fire insurance covering the latter's inventory of raw materials, those in process of manufacture and its finished product on hand, known as inventory insurance; that on December 27, 1946, Collins and one Anderson, the latter of whom represented Slide Rule and General Credit, met and discussed fire coverage on this inventory; that at that time Collins was still attempting to interest Slide Rule in this type of insurance; that Anderson told Collins that his companies had decided that they would carry such inventory insurance but had not determined the amount or type of policy; that Collins suggested a monthly reporting type; that Anderson told Collins that, after conferring with his associates, he would advise Collins of the definite amount of coverage; that Collins, at that time, said that he would promptly cover the risk in accord with the further information to be supplied, as soon as it was received; that Anderson wrote Collins on January 10, 1947, saying that his people desired $75,000 insurance on monthly basis type policies suggested by Collins and asking that the insurance be made effective at once ; that Collins immediately took steps to place such insurance with Lumbermen and later with the other companies; that Collins never advised Slide Rule or General Credit that any of the companies declined the insurance; that, likewise, he never told them the names of the companies with whom he had placed the insurance; that the evidence clearly disclosed an intention upon the part of Collins to bind each of the companies when and as they were designated by him; that Collins, in the usual course of business would have issued formal policies, had he been fully acquainted with the monthly reporting system, and that it was his intention at all times to make this insurance effective at once on a permanent basis as distinguished from interim coverage.

The court concluded as a matter of law that Collins had actual authority to bind all the companies; that he did bind each as he designated it in accord with his usual practice; that the parol contract was valid, as it included all the elements necessary to the making of a valid contract of insurance, including a proposal to insure, an agreement to insure, certainty of subject matter and a definite amount of insurance, the duration of the risk being understood to be the usual term, the rate the standard rate, and the

policy, the agreed form of standard policy; that the amount of premium was ascertained and arranged for and credit extended; that, though Collins did not have the requisite knowledge for writing a monthly reporting form policy, that fact was immaterial in determining the extent of his authority or the validity of the contract.

Whether the court erred in these respects depends upon whether the evidence, first, proves actual authority in Collins, and, second, whether the evidence supports the finding that a parol contract of insurance was effectuated. Obviously, these questions involve some consideration of the facts as well as the law.

It is now settled law that insurance companies may enter into binding parol contracts to issue new policies, to renew existing policies or to transfer existing insurance from one location to another. Hartford Fire Ins. Co. v. Farrish, 73 Ill. 166; Aetna Ins. Co. v. Maguire, 51 Ill. 342; Farmers' & Merchants' Ins. Co. v. Chesnut, 50 Ill. 111, 99 Am.Dec. 492; Firemen's Ins. Co. v. Kuessner, 164 Ill. 275, 45 N.E. 540; Stoelke v. Hahn, 55 Ill.App. 497; Fire Ass'n of Philadelphia v. Smith, 59 Ill.App. 655; Milwaukee Mechanics' Ins. Co. v. Schallman, 188 Ill. 213, 59 N.E. 12; Concordia Fire Ins. Co. v. Heffron, 84 Ill.App. 610; Hawthorne v. German Alliance Ins. Co., 181 Ill.App. 88; Fire Ins. Co. of Philadelphia County v. Sinsabaugh, 101 Ill.App. 55; Wilson v. Hartford Fire Ins. Co., 188 Ill.App. 181. The reason underlying the decisions is graphically expressed in Eames v. Home Ins. Co., 94 U. S. 621, 627, 24 L.Ed. 298, where the court said: "If parties could not be made secure until all the formal documents were executed and delivered, especially where the insuring company is situated in a different state, the beneficial effect of this benign contract of insurance would often be defeated and rendered unavailable. As said by Mr. Justice Field, in the case of Ins. Co. v. Colt, 20 Wall. 560, 567, 22 L.Ed. 423, 425, 'It would be impracticable' (for a company) 'to carry on its business in other cities and states, or at least the business would be attended with great embarrassment and inconvenience, if such preliminary arrangements required for their validity and efficacy the formalities essential to the executed contract. * * * If no preliminary contract would be valid unless it specified minutely the terms to be contained in the policy to be issued, no such contract could ever be made or would ever be of any use. The very reason for sustaining such contracts is, that the parties may have the benefit of them during that incipient period when the papers are being perfected and transmitted'." See also Union Mut. Ins. Co. v. Wilkinson, [13 Wall. 222], 80 U. S. 222, 20 L.Ed. 617; Hartford Fire Ins. Co. v. Tatum, 5 Cir., 5 F.2d 169; National Liberty Ins. Co. of America v. Milligan, 9 Cir., 10 F.2d 483; Aetna Ins. Co. of Hartford, Conn., v. Licking Valley Milling Co., 6 Cir., 19 F.2d 177, certiorari denied, 275 U.S. 541, 48 S.Ct. 37, 72 L.Ed. 415; annotation 69 A.L.R. 559."

Whether Collins had actual authority to make the binding parol contracts for insurance is dependent, of course, upon the evidence. The findings of the District Court in that respect must be approved unless they are clearly erroneous.

It is undisputed that Collins, as agent for the insurance companies, had blank policies in his possession which he was authorized to issue to his clients; that he did issue such contracts and collect the premiums therefor and that he had previously issued policies to Slide Rule and collected the premiums thereon. Such evidence, coupled with the other circumstances of record, we believe fully justify the finding of the court that Collins had actual authority to make contracts of insurance, either written or oral. Remembering that such actual authority may be implied from the facts, if they be of such character as to indicate an intention upon the insurer's part to create the agency, 2 C.J.S., Agency, § 23, pp. 1045, 1048 and 1050, it seems clear to us that Collins was the kind of agent who was authorized to make contracts of insurance and collect the premiums due thereon. The facts, it seems to us, are consistent only with actual authority upon his part to execute binding contracts of insurance in behalf of each of the insurance companies involved. Commissioned to make contracts

of insurance, he had all the power and authority to do everything necessary to effectuate culmination of the undertaking. Restatement of Agency, Sec. 35, 36, 43, 49, pp. 89, 90, 91, 103, 118, 119. We conclude, therefore, that the evidence amply sustains the finding that Collins had actual authority to make such a parol contract of insurance as is involved here.

Whether a parol contract for insurance was effectuated is likewise largely dependent upon the evidence. Anderson testified that Collins advised him that he represented several companies; that Anderson asked him if he could cover the insurance and that Collins replied that he could do so immediately; that Anderson replied "I am going home and write you as to the type of insurance and the amount" and that Collins replied that the insurance would be covered immediately upon receipt of that information. Anderson did go home and did write a letter saying that the type of insurance should be the monthly reporting type, which he and Collins had discussed, and the amount, $75,000. Collins' memory was not so clear, but all the circumstances surrounding his testimony seem to us of such character as to justify only the conclusion of the trial court to the effect that the minds of the parties met as to the amount of insurance, the type of insurance and the premium, it being understood that the premium would be the amount properly chargeable for that type of insurance. There are various facts and circumstances in the record which fully substantiate, we think, the court's finding that the contract was clear and definite, that the parties did agree upon insurance of $75,000 upon the inventoried goods on the monthly reporting basis and that Collins assured Anderson that the insurance would be effective immediately. Upon these facts, the court's conclusion of law that the contract was binding was justified by the law.

Much is said concerning communications from the insurance companies to Collins limiting the latter's authority. None of these was communicated to Slide Rule or General Credit and neither of them had any knowledge or notice of the same before the loss was incurred. Where one is clothed with actual authority to issue contracts, it matters not that his acts may have been in violation of private instructions or limitations upon his authority of which the person dealing with him has no actual or constructive knowledge. Farmers' & Merchants Ins. Co. v. Chesnut, 50 Ill. 111, 99 Am.Dec. 492; Gray v. Merchants Ins. Co., 113 Ill.App. 537; 32 C.J. 1063; 44 C.J.S., Insurance, § 149. The powers of the agent are, prima facie, coextensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals. See also Southern Life Ins. Co. v. McCain, 96 U.S. 84, 86, 24 L.Ed. 653; Hall v. Union Indemnity Co., 8 Cir., 61 F.2d 85, at page 91, certiorari denied 287 U. S. 663, 53 S.Ct. 222, 77 L.Ed. 572; Cooley on Insurance, 2d Ed., Vol. 1, p. 463. In Southern Life Ins. Co. v. McCain, 96 U. S. 84, 24 L.Ed. 653, the court said: "* * * The law is equally plain, that special instructions limiting the authority of a general agent, whose powers would otherwise be coextensive with the business intrusted to him, must be communicated to the party with whom he deals, or the principal will be bound to the same extent as though such special instructions were not given."

It is said that the parties' minds did not meet upon the names of the companies to be bound. We think this wholly immaterial under the facts and circumstances of record. When the agent represents several companies and selects certain of them to be bound by the risk, he is contracting for undisclosed principals. Each of the companies he represents has intrusted him with the agency, and must be held to have given him authority as such agent to select it as the one to bear the risk. Such authority springs inevitably from his authority to make insurance contracts. The insured can not be permitted to suffer because the agent fails to disclose at the time of making the contract which of several principals he binds. Aetna Insurance Company of Hartford, Conn., v. Licking Valley Milling Co., 6 Cir., 19 F.2d 177; Elliott v. Standard Accident Insurance Company, 92 N.H. 505, 33 A.2d 562; Milwaukee Bedding Co. v.

Graebner, 182 Wis. 171, 196 N.W. 533; Federal Insurance Co. of Hartford, Conn., v. Sydeman, 82 N.H. 482, 136 A. 136; Fire Insurance Company of Philadelphia County v. Sinsabaugh, 101 Ill.App. 55.

It is insisted that, at most, the contract made with Collins was only of temporary character. It is clear from the evidence, of course, that the parties expected the parol contract to be followed by certain policies, but that fact does not make the contract any less binding or effective. Again we think the evidence clearly sustains the court's findings. As said in Cottingham v. National Mutual Church Insurance Co., 290 Ill. 26, 124 N.E. 822, 825: "The object of the parties in making such a contract, and of the courts in upholding the same, is that the parties may have the benefit of it during that incipient period when the papers are being perfected and transmitted. It is sufficient if one of the parties to such a contract proposes to be insured and the other party agrees to insure, and the subject, the period, the amount and the rate of insurance are ascertained or understood, and the premium paid, if demanded. * * * It is not necessary in such a preliminary contract that all the details of the contract as finally expressed in a written policy should be specified."

■ Firemen and Citizens insist that the insured is not entitled to recover for the reason that no proofs of loss were executed, whereas its standard forms of policies require proof of loss within a certain fixed period. The trial court found that each of the companies denied liability within 60 days after the loss and have ever since continued to deny liability; that each of them was addressed, within the period, by counsel, who called attention to the situation existing, requested declaration of the insurer's intention and specifically demanded such forms for making proof as the companies desired filed, and that Firemen and Citizens ignored the communications, stood mute, and refused to make any statement or furnish forms for filing proof of loss. The court concluded, as a matter of law, that inasmuch as the companies had denied any obligation to the insured and failed to furnish blanks for proof of loss,

even though requested so to do, proof of loss was waived. The evidence undeniably supports the finding of fact in this respect; the several companies did deny liability; they did fail to furnish the proper forms even though requested so to do. Slide Rule is thereby excused from the requirement. Welch v. Northern Assurance Co., 223 Ill. App. 77; Liverpool & London & Globe Ins. Co., Limited, of England, v. McCree, 213 Ala. 534, 105 So. 901; Meyer v. National Fire Ins. Co. of Hartford, Conn., N.D. 1936, 67 N.D. .77, 269 N.W. 845; Johnson v. Yorkshire Ins. Co., Mich.1923, 224 Mich. 493, 195 N.W. 45; Nebraska & Iowa Ins. Co. v. Seivers, 27 Neb. 541, 43 N.W. 351.

■ There remains the contention of Firemen and Citizens that if they are to be held liable, Lumbermen should be held primarily liable. As we have seen, the trial court found as a matter of fact that the liability of Firemen and that of Citizens had been substituted by their authorized agent, Collins, for the liability of Lumbermen. As between Firemen and Citizens on the one hand and Lumbermen on the other, we know of no reason why such an arrangement by their common agent should not be binding upon each. If any misfortune has resulted to either of them from such a situation, it is solely because they have seen fit to authorize their agent Collins to make contracts of insurance. Apparently this situation has not risen in Illinois heretofore, but the authorities in various jurisdictions sustain the District Court's conclusion in this respect. Thus, in Rose Inn Corporation v. National Union Fire Insurance Company et el., 258 N.Y. 51, 179 N.E. 256, 83 A.L.R. 293, the court said: "It is a principle of almost universal acceptance that where an assured has applied for insurance to an agent, having authority to write policies for many companies, has left to the agent the selection of the companies, with instructions to maintain the insurance in an amount stated, and the agent has undertaken so to act, the agent, upon notice from his companies to cancel, has power to waive for the assured the five-day period of cancellation, to cancel the policies at once, and immediately to write new policies in other

companies for the assured, so that the new policies become at once effective. The following cases are a few among many in which the principle stated has been enunciated: May v. Hartford Fire Ins. Co., 2 Cir., 297 F. 997, 998; Sterling Fire Ins. Co. v. Comision Reguladora Del Mercado De Henequen, 195 Ind. 29, 143 N.E. 2; Federal Ins. Co. of Hartford, Conn., v. Sydeman, 82 N. H. 482, 486, 136 A. 136; Schauer v. Queen Ins. Co., 88 Wis. 561, 60 N.W. 994; Pelaggi & Co. v. Orient Ins. Co., 102 Vt. 384, 148 A. 869. The holding in this case that the old policies had been cancelled, and that new policies had become effective, was unquestionably correct." See also Sterling Fire Insurance Co. v. Comision Reguladora, 1924, 195 Ind. 29, 143 N.E. 2; Allemania Fire Insurance Co. v. Zweng, 1917, 127 Ark. 141, 191 S.W. 903; Girard Fire & Marine Ins. Co., of Philadelphia v. Anglo-American Mill Co., 1927, 220 Ky. 173, 294 S.W. 1035; Pelaggi & Co. v. Orient Insurance Company, 102 Vt. 384, 148 A. 869.

We think the case of Hartford Fire Insurance Company v. McKenzie, 70 Ill.App. 615, cited by the insurance companies, is inapplicable to the issue here involved. There the agent had issued a policy binding Hanover. Later, having been directed to cancel it, he wrote a new policy in Hartford. But the insured was never advised of this action and the Hartford policy was never brought to his attention. Hanover remained liable because the insured, having procured a policy from it, had a right to rely upon continuation of that policy until notified to the contrary and reimbursed for paid unearned premium. So here, the trial court found that as between the insured and Lumbermen there was a valid contract of insurance upon which Lumbermen was still liable to the insured, but that as between Lumbermen on the one hand and Citizens and Firemen on the other, there was no reason why their agent Collins could not, in behalf of Lumbermen, release it and validly contract for insurance for Citizens and Firemen in lieu thereof.

The District Court included in the judgment interest upon the amount due from each of the insurers from April 8, 1947. The Illinois Statute, Chapter 74, Smith-Hurd Illinois Annotated, Section 2, after providing for interest upon money due on written contracts, declares further that interest many be allowed "on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment." We are bound by this act, for, in the absence of a statute authorizing interest, it cannot be allowed. Totten v. Totten, 294 Ill. 70, 128 N.E. 295; Continental Nat. Bank & Trust Co. of Chicago v. Olney Nat. Bank, 7 Cir., 33 F.2d 437. We have seen that the contract was one in parol to effectuate insurance. The money due the insured arose from breach of that contract. In such a situation the money due was not "money lent or advanced for the use of another," "money due on the settlement of account from the day of liquidating accounts," "money received to the use of another and retained without the owner's knowledge" or "money withheld by an unreasonable and vexatious delay of payment."

We are supplied with no citations of authority under the Illinois statutes which would justify allowance of interest. As the State Supreme Court said in Railway Passenger and Freight Conductors' Mutual Aid and Benefit Association v. Tucker, 157 Ill. 194, 42 N.E. 398, 401, 44 N.E. 286: "We have held that the contract embodied in such a certificate of membership as is set out in the declaration in this case, taken in connection with the constitution and by-laws of the association, and such oral evidence as is necessary to link together the written and unwritten matter, is an unwritten contract. Railway Pass. & Freight Conductors' Mut. Aid & Benefit Ass'n, v. Loomis, 142 Ill. 560, 32 N.E. 424. We have held that interest is not allowable upon such a contract under the Illinois statute. West Chicago Alcohol Works v. Sheer, 104 Ill. 586. This suit is not brought upon any

such instrument in writing as is contemplated by the act in regard to interest, and it cannot be claimed that here money has been withheld by unreasonable and vexatious delay of payment." See also Cottingham v. National Mutual Church Ins. Co., 290 Ill. 26, 124 N.E. 822. In West Chicago Alcohol Works v. Sheer, 104 Ill. 586, where the plaintiff sought to recover the amount due on an oral lease, liability upon which had been denied by defendant, the court said: "It is insisted that as it was a sum certain which, by the terms of the contract, would become due under it, it was a liquidated sum, and so would carry interest under this clause of the statute. This would be to give interest in case of every verbal contract, where the money due under it is a definite sum. But such is not the reading of the statute. It gives interest on all moneys after they become due on any instrument in writing, and inferentially, not on moneys which become due on any verbal contract, and this, we conceive, without regard to whether the money to become due is a sum certain or uncertain." We conclude that, under the Illinois statute, as interpreted by the Illinois Supreme Court, the District Court was without authority to allow interest.

The judgment of the District Court is modified so as to eliminate allowance of interest prior to time of judgment and so modified, is affirmed.