DETERMINED IN THE

## SECOND DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1906.

---

### Abner L. Barlow v. The Farmers' Mutual Fire Insurance Company.

#### Gen. No. 4,709.

1. INSURANCE—*what essential to binding contract of.* In order to make a binding oral contract for insurance, one party must propose to be insured and the other party must agree to insure, and the subject, the period, the amount and the rate must be ascertained or understood and the premiums must be paid if required. There must be a certain and definite contract, express or implied, covering all these essential elements.

Action of assumpsit. Appeal from the Circuit Court of Lee county; the Hon. RICHARD S. FARRAND, Judge, presiding. Heard in this court at the April term, 1906. Affirmed. Opinion filed October 16, 1906.

H. A. BROOKS and C. C. BROOKS, for appellant.

E. E. WINGERT and A. C. BARDWELL, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

The declaration in this suit brought by Barlow against a fire insurance company, charged that on February 11, 1905, defendant made a contract of insurance with plaintiff, and thereby, in consideration of

(580)

$9 to be afterwards paid by plaintiff to defendant, did insure plaintiff against loss by fire to the amount of $1,500, on the terms, conditions and provisions of the charter and by-laws of defendant, as follows: On his dwelling-house, situate on certain described lands in Lee county, $900; on his barn on said premises, $200; on the other outbuildings on said premises, $400; that on February 16, 1905, said dwelling-house was destroyed by fire, and plaintiff thereby sustained loss on said property to the amount of $1,500 which defendant, though requested, has refused to pay. Defendant pleaded the general issue. There was a trial, a verdict for defendant and a judgment thereon, from which plaintiff appeals.

Plaintiff was a member of defendant company and had insurance in it upon other property owned by him. There was no written contract of insurance covering the property described in the declaration, but plaintiff sought to prove an oral contract. On May 24, 1899, Oliver P. Courtright owned the farm described in the declaration, and on that date defendant issued to him a policy of insurance on the buildings on said farm, of which $900 was on this dwelling-house. By a deed dated and acknowledged December 22, 1900, and recorded February 6, 1901, Courtright conveyed the property to plaintiff. Soon after, plaintiff learned from defendant's agent that there were two back assessments unpaid upon that policy, and he therefore declined to take it, and on March 21, 1901, defendant canceled that policy because the property had been sold and the insurance had not been transferred. Thereafter, and prior to August 20, 1904, plaintiff and Seavey, an agent of defendant, had conversations upon the subject of plaintiff's insuring the buildings on the Courtright farm with defendant. On August 20, 1904, Seavey wrote plaintiff as follows: "Your business has been put off, or rather, I have been kept from attending to it so long that I do not feel right about it.

Now if you will set a day next week when you can attend to it, I will come to your place and look over the buildings and we will fix the matter up. Please send word on the enclosed card." A postal card addressed to Seavey was enclosed with this letter. Plaintiff did not fix a time or reply to the letter, and nothing further was done about the insurance at that time.

On the morning of Saturday, February 11, 1905, a building owned by plaintiff situated on another farm and insured with defendant, was destroyed by fire. That evening plaintiff had a conversation with Seavey over the telephone, and if defendant ever entered into an oral contract to insure the buildings on the Courtright farm for plaintiff, such contract was made in that conversation. Plaintiff testified that he asked Seavey over the telephone if he knew plaintiff had had a fire, and Seavey replied that Coe, president of defendant, had told him; that plaintiff then told Seavey he was ready for that insurance on the Courtright farm and wanted all his insurance increased as they had talked previously, and was in a hurry to have it done; that Seavey said he would come over the first of the week and "fix the matter up," or "fix it up;" that plaintiff said he wished Seavey would come over on Monday; that Seavey said it was snowing at that time, and if the roads were blocked on Monday he would fix the matter up the first day following; that when plaintiff mentioned raising the insurance Seavey said that the buildings were such on the Courtright property that he would not want to increase the insurance Courtright had on that property, and that plaintiff replied to that "All right." In order to make a binding oral contract for insurance, one party must propose to be insured and the other party must agree to insure, and the subject, the period, the amount and the rate must be ascertained or understood, and the premiums must be paid if required. There must be a

definite and certain contract, express or implied, covering all these essential elements. Ins. Co. of N. America v. Bird, 175 Ill. 42; Milwaukee Ins. Co. v. Graham, 181 Ill. 158; Continental Ins. Co. v. Roller, 101 Ill. App. 77. Some of these elements can be supplied by implication in the present case. The insurance plaintiff sought was understood by himself and Seavey to be in the defendant company; and the by-laws of defendant fixed the rate of premium on ordinary farm risks, the charge for the examination and the policy, and made the term perpetual. Plaintiff was already a member, and it might well be presumed that in the conversation both parties spoke with knowledge of these provisions. If Seavey had replied, "We will insure the buildings on the Courtright farm at the same sums as in Courtright's policy," a promise by plaintiff to pay the premium might well have been implied, and the contract might then have been complete. But Seavey did not say defendant would insure these buildings. He only said he would come over Monday or Tuesday and "fix the matter up," or "fix it up." These words cannot be stretched into a present agreement to insure. They meant that Seavey would come over the next week and make a contract of insurance with plaintiff. Seavey cannot be presumed to have meant any more by those words than he meant when he wrote plaintiff during the previous August, "If you will set a day next week when I can attend to it, I will come to your place and look over the buildings and we will fix the matter up," and plaintiff does not claim that that letter constituted an agreement to insure. While Seavey said over the telephone that owing to the condition of the buildings he would not want to increase the insurance Courtright had on the property, he did not say he would place as much insurance on them as Courtright had, and it is obvious that his purpose in agreeing to come over on Monday or Tuesday was to see the buildings and their condition before writing any insurance upon them.

On Thursday, February 16, 1905, the day the dwelling-house involved in this case was burned, but earlier in that day, Seavey wrote and mailed to plaintiff a letter in which he explained that the roads were blocked Monday; that he had caught a severe cold and would not be able to leave home that week; that he had telephoned Coe, the president, to see if he could attend to it, but that Coe was in the same fix; and Seavey added: "The buildings will have to be examined by whoever writes them up." Coe testified for defendant, that Seavey telephoned him after the first fire that plaintiff wanted some insurance, and he replied that he had a heavy cold and could not go out; that a couple of days later he met plaintiff and plaintiff told him that having had a fire he was anxious to have insurance on these other buildings, and that he told plaintiff he had a heavy cold and could not go out, and if plaintiff was anxious about it he had better go to some old line company, and that he had better not wait on Seavey as he was out of health. Plaintiff does not deny this conversation, but says it was after the second fire, and related to the other buildings. Coe also testified that when defendant settled with plaintiff for the first fire, plaintiff asked what they were going to do about the second fire, and he told plaintiff that as he understood it they had no insurance on that property, and plaintiff replied that he had applied for insurance and none of them came out to write up the insurance or look up the matter, and that he felt that he was entitled to damages, and Coe replied that they had no right to pay out the people's money for property they did not have insured, and that ended the conversation. Plaintiff did not deny this conversation, but practically admitted it, and said that when they said they had no insurance on this property, he told them that he had called for the insurance and it was not attended to. We think it clear from the testimony introduced by plaintiff and from the testimony introduced by defendant and not contradicted, that defendant's agent did not agree to insure this

property, and that neither so understood it at the time, or even when the loss on the first fire was settled after the second fire had occurred. Therefore plaintiff could not recover, upon his own showing. Of Seavey's version of his conversation with plaintiff over the telephone, it is sufficient to say that, if it was true, there was no contract to insure.

Plaintiff complains of the refusal of certain instructions requested by him. All that was correct in these instructions was embodied in other instructions given at plaintiff's request. Several of the refused instructions either omit a necessary element of a valid oral insurance, or incorrectly state what would be sufficient to create such a contract, and the seventh would have incorrectly told the jury that the statement by the agent that "he would fix the matter up," was an agreement to insure. But if there was any error in the rulings of the court upon the instructions, yet that will not be ground for reversal, because the plaintiff's proof does not show that a contract of insurance was entered into. We approve of the rulings of the court upon the admission of testimony of which complaint is made.

The judgment is, therefore, affirmed.

*Affirmed.*