# A. J. C. Cottingham et al., Trustees of Dillon Methodist Episcopal Church, South, Appellees, v. National Mutual Church Insurance Company, Appellant.

## Gen. No. 23,762.

1. INSURANCE, § 115*—*right to bring suit on contract for, to enforce liability of fire insurance company.* A suit to enforce the liability of a fire insurance company may be brought on the contract for insurance as well as on the policy itself, the real cause of action being the same in both the contract and the policy.

2. INSURANCE, § 115*—*what is nature and effect of contracts for.* Contracts for insurance are considered as temporary contracts pending the issuance of the policy and, if the minds of the parties have agreed upon the essential elements, they are sufficient to hold the insurer.

3. INSURANCE, § 115*—*when contract for is completed.* Where, by correspondence, an insurer offers to insure upon certain terms and the offer is accepted by mail, the contract is complete from the date the acceptance is mailed.

4. INSURANCE, § 115*—*what is valid contract for.* It is not necessary to a valid contract of insurance, that the details be agreed upon, the essential terms expressed or the premium paid, unless such payment is demanded as a condition, but it is sufficient if the terms can be gathered from the circumstances and if the property, the period and the rate are understood or can be ascertained.

5. INSURANCE, § 115*—*when failure of minds to meet on contract for is not shown.* In an action to recover on a contract for insurance on two buildings, where the offer of the insurer has been accepted, a failure of the minds of the parties to meet is not shown by evidence that the exact amount to be placed on each building and the exact amount of the premiums had not been determined, where it appears that the total amount on the two buildings had been agreed upon and the amount to be placed on each was ascertainable by computation, as was also the amount of the premium.

6. INSURANCE, § 115*—*what does not defeat agreement for insurance.* Where the parties to an agreement for insurance fix the premium basis at a certain per cent. of the premium charged by old line companies without stating what the rate of such old line companies is, the agreement is not defeated by the fact that after

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the offer to insure has been accepted the insurer questions the statement of the insured as to the amount charged by old line companies.

7. INSURANCE, § 141*—*when term of insurance begins.* Where one to whom an offer of insurance has been sent by an insurer mails a letter accepting the contract offered by the insurer, the term of the insurance begins when the letter of acceptance is mailed.

8. INSURANCE—*when insurer precluded from claiming nonexistence of contract for, before issuance of formal policy.* Where, at the outset of negotiations for a contract of insurance, the insurer invites the other party to enter into a temporary contract, suggesting that this can be done by mail or wire, and pursuant to this invitation the parties proceed by correspondence to an agreement upon the essential terms of the contract, the insurer cannot be heard to claim the nonexistence of a contract of insurance before the issuance of a formal policy.

9. INSURANCE—*when provision in application that insurer not liable until policy approved is waived.* The effect of a clause in an application for insurance that the insurer will not be liable - until the policy is approved by the home office is waived where the correspondence in regard to the contract is held directly with the secretary and manager of the insurer at the home office.

Appeal from the Circuit Court of Cook county; the Hon. DAVID F. MATCHETT, Judge, presiding. Heard in this court at the October term, 1917. Reversed and judgment here. Opinion filed March 5, 1918.

N. M. JONES, for appellant; SAMUEL A. HARPER, of counsel.

ALDEN, LATHAM & YOUNG, for appellees; CHARLES MARTIN, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiffs, whose church was destroyed by fire, brought suit against the defendant corporation to recover insurance, and upon trial by the court had judgment for $14,500, from which the defendant appeals.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Plaintiffs are the trustees of the Dillon Methodist Church, South, which is located at Dillon, South Carolina, where it owned and occupied a church building and parsonage. Defendant is a corporation dealing in fire insurance, organized under the insurance laws of the State of Illinois, with its principal office in Chicago. It makes a specialty apparently of issuing fire insurance upon church and parsonage buildings throughout the United States, soliciting business largely through circulars and letters. On December 18, 1914, it sent from the home office a letter addressed to Rev. A. J. Cauthen, the pastor of plaintiffs' church, at Dillon, South Carolina, calling attention in earnest language to the necessity of having church buildings and parsonages insured; that the losses from fire had averaged about one each day, and that the Dillon church or parsonage might be the next to go, with the loss of property which represented the sacrifice, etc., of so many faithful people. It presented that the cost of protection under defendant's system was trifling, and advised "prompt use of the mails or wires," for experience had shown that a fire never came at a convenient time. The letter concluded with: "Upon arrival of request by wire, we will bind insurance pending receipt of regular application, and agreement as to terms." This was followed by correspondence between the parties looking to the issuance of a policy, but before this culmination plaintiffs' church was destroyed by fire, and the question for determination is whether the correspondence progressed to that stage of certainty as to terms which imposed an obligation upon the defendant.

Inclosed in the above letter was a printed form of application for a policy of insurance. It contains a number of questions as to the building, and directs that a separate application should be made on the parsonage. The various questions contained in the application were partially filled in by the plaintiffs,

who wrote upon the application the following: "This is not application, but inquiry for rate on $25,000." It also contained the printed statement: "That no liability of the company shall attach until this application has been actually approved at the Home Office." This application was inclosed with a letter dated December 28, 1914, from Mr. Cauthen, the pastor, addressed to the company at its home office in Chicago, as follows:

"I enclose herewith application for rates of insurance on our church for an amount not exceeding $25,000. Would like to know rate on parsonage described as follows: Two-story, frame, nine rooms, heated with grates, cost about $5,000. It is not nearer a building than the church—fifty feet away. The next nearest house is across the street sixty feet. It has water connections and is lighted with electricity. We now have it insured but we wish to transfer the whole or a part of all our property into a cheaper company, provided it is safe. Please give me the information needed as to your company."

To this the defendant replied under date of December 30, 1914:

"Your favor of the 28th inst. is received.

"We are in position to take care of $14,500 on your church. Our policy, of course, would permit other insurance, so that the additional amount may be taken care of in other companies. We try to be conservative and never accept excessive amounts subject to any one fire. The church and parsonage being only 30 feet apart, we must confine our line on both buildings to $14,500.

"When filling out the application for rate on church, we regret that you did not reply to question No. 17, asking for the rate charged by old line companies. The enclosed red circular will explain more fully why it is to the interest of our applicants to give us this information. In the absence of a reply to this question, we state that our premium for the first year will be 10 per cent. less than one-third of the amount reliable old line stock companies would charge you, all

in advance, for a three-year policy, plus a policy fee of $1.50. The policy fee is to be paid only at the beginning of the five-year term.

"Our policies, as you doubtless know, are issued for a term of five years, but instead of collecting in advance for the entire term, as is done by stock companies, we collect in annual installments."

The red circular referred to and enclosed is a statement calling the attention of applicants to the desirability of answering the question in the application regarding the stock company rates, "if they can do so without special inconvenience"; that the defendant was able to make rates much less than those fixed by stock companies and still give substantial dividends to the policy holders; that the defendant "ought to have this information, but where it is not convenient to give it to us, we get along without it the best way we can." Plaintiffs' reply to this letter is dated January 5, 1915, and is as follows:

"In reply to yours of recent date, will say that our Board has instructed me to request you to issue a policy on our church and parsonage for the amount of $14,500—fourteen thousand five hundred dollars—as per your offer. The present insurance is at the rate of $6.50 per thousand; which, according to your statement, will make your rate $1.95 per thousand. We value the entire property at about $48,000, the church at $40,000, and the parsonage at $8,000. I suppose these figures will determine the relative amount of insurance on each, should either be destroyed. Hoping to hear from you at an early date as to this matter, I am

Very truly yours,<br>A. J. CAUTHEN."

This letter was duly mailed on the afternoon of January 5, 1915, in the post office at Dillon, and was received at the Chicago office of the defendant on the afternoon of January 7, 1915. On the intervening day, that is, on the afternoon of January 6, 1915, the church building in question was totally destroyed and

consumed by fire, at which time the letter was in transportation through the mails. On January 7th plaintiffs notified the defendant by letter of the destruction of the church by fire, and asked the defendant to send a representative to investigate or to send proofs of loss. On January 8, 1915, the defendant, before it had received the letter apprising it of the fire, and without knowledge of this, wrote plaintiffs as follows:

"Your favor of the 5th instant ordering policy for $14,500 on your church and parsonage is received.

"Before proceeding, permit us to trouble you for a little additional information. As the Church and parsonage are separate buildings, it will be necessary for us to place a specific amount of insurance on each. Kindly inform us how much of the $14,500 you wish to have cover your parsonage.

"We note what you say regarding the stock company rate being $6.50 per thousand. Do we understand correctly that this is their rate for one year on the church and that for three years they would charge you twice this amount or $13.00? Is the rate the same on the parsonage? The enclosed red circular will explain more fully why we do not lose sight altogether of the rates charged by stock companies. A rate of 65 cents per hundred for three years on a church is lower than reliable stock companies usually charge.

"In order that you may be properly protected, we bind as of twelve o'clock noon today, $12,000 on your church and $2,500 on the parsonage, subject to proper rate, and will hold our binder in effect for ten days, thus allowing ample time for your reply to reach us."

Upon receipt of plaintiffs' letter notifying defendant of the fire, it replied disclaiming any liability for insurance.

It has been settled by many decisions that a suit to enforce the liability of an insurance company may be brought on the contract for insurance as well as on the policy itself; that the real cause of action is the same in both the contract and the policy. Such contracts are considered as temporary contracts pending

the issuance of a more detailed policy of insurance, but if the minds of the parties have agreed in the temporary contract upon the essential elements, it is sufficient to hold the insurance company.

"Where an application for insurance is presented to a company, stating what is wanted and the terms, and its officer or any agent having authority to issue a policy says one will be issued on that application, the minds of the parties have met in the execution of a contract and a contract for insurance has been consummated." *Firemen's Ins. Co. v. Kuessner*, 164 Ill. 275, 280.

Where by correspondence an insurance company offers to insure upon certain terms and the offer is accepted by mail, the contract is complete from the date the acceptance is mailed. *Tayloe v. Merchants' Fire Ins. Co.*, 9 How. (U. S.) 390; *Burton v. United States*, 202 U. S. 344; *Pennsylvania Lumbermen's Mut. Fire Ins. Co. v. Meyer*, 126 Fed. 352.

It is not necessary that the details be agreed upon; it is sufficient if the property, the period and the rate are understood or can be ascertained. *Eames v. Home Ins. Co.*, 94 U. S. 621; *Continental Ins. Co. v. Roller*, 101 Ill. App. 77; *Barlow v. Farmers' Mut. Fire Ins. Co.*, 128 Ill. App. 580. And it is not necessary that the essential terms be expressed; it is sufficient that these may be gathered from the circumstances. *Concordia Fire Ins. Co. v. Heffron*, 84 Ill. App. 610. The risk is deemed to have commenced from the date of the contract. *Rose v. Mutual Life Ins. Co.*, 240 Ill. 45; *Firemen's Ins. Co. v. Kuessner*, 164 Ill. 275. A payment of the premium is not necessary unless demanded as a condition. *Kuessner* case, *supra; Cohn v. Mechanics & Traders Ins. Co.*, 175 Ill. App. 594.

In view of these decisions this court is of the opinion that when plaintiffs mailed their letter of January 5, 1915, accepting the proposition made in the prior letters of the defendant, the contract was completed on that date.

Defendant asserts that the minds of the parties did not meet with reference to three essential particulars:

First. That the definite proportion of the total insurance to be placed on each building, the church and the parsonage, was not determined. We hold that it was. It will be noted that while the aggregate amount of insurance on both buildings was $14,500, yet the agreement was for separate policies on these buildings. The application inclosed in the first letter to plaintiffs so directed, and plaintiffs' reply of December 28th refers to the application as on the church, with an inquiry as to the rate on the parsonage, with a description as to its size, number of rooms and cost, also as to its location with reference to the church and other buildings. The subject-matter of this letter has to do almost wholly with insurance on the parsonage as a separate proposition. The reply was that as the church and parsonage were only 30 feet apart, defendant would not insure more than $14,500 on both buildings, to which plaintiffs replied in their letter of January 5th that the church was valued at $40,000 and the parsonage at $8,000, and that these figures were sent to determine the relative amount of insurance on each building. This leaves it a simple matter of mathematical computation. The aggregate of insurance of $14,500 was to be divided between the two buildings in the ratio of five to one, which computed is $2,416.67 on the parsonage, and $12,083.33 on the church building. As this is definitely determined from the data given by plaintiffs, it comes within the rule that that which can be ascertained by computation is as certain as if definitely expressed.

Second. Did the minds of the parties meet as to the premium? The proposition contained in defendant's letter of December 30th is that "the premium for the first year will be 10 per cent. less than one-third of the amount reliable old line stock companies would charge you, all in advance, for a three-year

policy, plus a policy fee of $1.50. The policy fee is to be paid only at the beginning of the five-year term." This fixes definitely as a basis whatever old line stock companies would charge for a three-year policy. It is not necessary that these exact figures should be stated. It is exactly stated as to how much less than this defendant's insurance would cost plaintiffs. It would be a matter of ready ascertainment by inquiry as to the amount charged by the old line companies, and the less cost in defendant's company easily computed from its figures in its offer.

Defendant seeks to build an argument on the fact that after receipt of the letter of acceptance the defendant company seemed to question a statement in plaintiffs' letter of January 5th concerning the rate in other companies. We do not think this is important: First, plaintiffs were not undertaking to state the rate in the old line companies but only the rate of the present insurance; and second, even if the rate in the old line companies had been shown to have been less than defendant had supposed, this would not relieve it of its undertaking at a reduced rate, where the percentage of reduction was definite. If A should contract to sell his horse for 10 per cent. less than a neighbor had sold his, he could not avoid his obligation because it subsequently developed that the neighbor had sold at a less figure than A had supposed.

Third. It is said that the term of the insurance is not fixed, but this is negatived by the rule above referred to that the term of insurance begins when the minds of the parties have met in contract, and in the present circumstances under the law it began when plaintiffs had mailed to defendant their letter of acceptance of January 5, 1915; and the application and correspondence clearly designate a term of five years.

The three particulars above referred to are the only ones in which it is claimed that the correspondence is uncertain, but in the opinion of the court these

particulars are either definitely stated or can be as definitely ascertained by computation. It follows, therefore, that the contractual relations between the parties existed at the time of the fire.

It might be added as pertinent to the general situation that the very first letter from the defendant to the plaintiffs was an invitation to enter into a temporary or binder contract; that it suggested that this could be done by mail or wire; and, therefore, when in pursuance of this invitation the parties proceeded by correspondence to an agreement upon the essential terms of the insurance contract, defendant cannot be heard to claim the nonexistence of such contract before the issuance of the formal policy.

As to the clause in the application that the defendant would not be liable until the policy had been approved by the home office, it is sufficient to say that the correspondence of plaintiffs was held directly with the secretary and manager of the defendant company at the home office, and hence the effect of this clause was waived.

However, we are not able to concur with the trial court as to the amount of the judgment. If we are correct in our conclusion that the amount of the insurance placed on each building was fixed, it would follow that plaintiff is entitled to recover only the amount of the insurance on the particular building destroyed. The parsonage was not destroyed, only the church building, and upon this latter building, as we have stated, the contract of insurance was for $12,083.33. We are of the opinion that the court was in error in entering judgment for the entire amount of $14,500, and hence that judgment is reversed and judgment for the plaintiffs is entered in this court for $12,083.33.

*Reversed and judgment here for $12,083.33.*