THE FIREMEN'S INSURANCE COMPANY

*v.*

FERDINAND KUESSNER.

*Filed at Ottawa November 23, 1896.*

| 164 | 275 |
| 84a | 612 |
| 84a | 613 |

| 164 | 275 |
| 101a | [2] 57 |
| 101a | [1] 80 |

| 164 | 275 |
| 110a | [2]195 |

1. INSURANCE—*valid contract of, may be made by parol.* Corporations authorized by their charters to make contracts of insurance by issuing written policies are not precluded from entering into parol contracts to effect the same object.

2. SAME—*suit may be maintained, to recover loss, on parol contract for insurance.* Suit for loss may be brought upon a parol contract for insurance as well as upon the written policy, as the cause of action and measure of damages are the same, and the policy, being based upon the contract, can contain no elements different therefrom.

3. SAME—*parol promise to issue policy on an application completes contract.* A parol promise to issue a policy of insurance upon an application presented completes the contract of insurance though no premium is paid, unless the premium is demanded as a condition precedent.

4. SAME—*effect of paying after loss without giving notice.* The paying of a premium after a loss has occurred under an oral contract of insurance, without disclosing the loss, is not fraud, as the insured owes the company no duty to disclose the loss before paying. .

*Firemen's Ins. Co.* v. *Kuessner*, 59 Ill. App. 432, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. NATHANIEL C. SEARS, Judge, presiding.

WILLIAM J. AMMEN, for appellant:

A promise to insure, made by one whose business is to insure, is performed by issuing a policy. An oral contract that a company will insure the owner of property against loss from the time of making such oral contract, and that a policy should issue, is valid and binding on the company if made within the real or apparent scope of the agent's authority. Such contracts will be enforced by compelling specific performance by the company, or in an action for a breach of the agreement. *Ellis* v. *Insurance Co.* 50 N. Y. 402; *Angell* v. *Insurance Co.* 59 id. 1332.

Where it is understood, as a part of the contract, that a policy is to be executed and delivered immediately or in due course of business, which was not done, the action must be upon the breach of the parol agreement for insurance in not delivering a policy. *Insurance Co.* v. *Seives*, 27 Neb. 541; *Campbell* v. *Insurance Co.* 73 Wis. 100.

A proposal cannot become a contract from mere delay in rejecting or answering it. *Insurance Co.* v. *Johnson*, 23 Pa. St. 72.

There must be a distinct proposition made by one party, an unconditional acceptance of it by the other, and certainty as to time, rate, property to be insured, etc. *Bishop of Chatham* v. *Insurance Co.* 22 N. B. 243.

An action on a policy and an action on a verbal agreement for a policy are distinct actions, and should be so declared on. *Insurance Co.* v. *Kinne*, 77 Mich. 231.

U. P. SMITH, also for appellant.

NELSON MONROE, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

Appellee brought an action on a policy of insurance for $300, of date October 6, 1891, and upon an alleged oral contract for $1000 insurance on the same property, alleged to have been made March 1, 1892, by the appellant. The property on which insurance was claimed was destroyed by fire about five o'clock P. M. on March 1, 1892, the application for insurance, on which the oral contract is alleged, having been presented at an earlier hour of that day. A recovery was had in the trial court on the policy and also on the oral contract.

Ferdinand Kuessner was carrying on the business of upholsterer in a small way on Twenty-second street, in Chicago, and his stock consisted largely of upholstered goods. For several years prior to the first day of March, 1892, one Edward Burbank, who had his office with the appellant company, had been soliciting the insurance of appellee, and had, previous to the first day of March, 1892, solicited and placed insurance on appellee's property of $1000 in the Commercial Insurance Company and $300 in the appellant company. On the morning of March 1, 1892, said Burbank called at the store and stated to appellee that his policy of $1000 in the Commercial Insurance Company had expired, and asked appellee if he did not want to renew the same. Appellee replied that he did. Then Burbank asked appellee if he would not like to have the $1000 placed in the Firemen's Insurance Company, who had at the time a policy of $300 then existing and in force on the same property. Appellee asked of Burbank if the Firemen's Insurance Company was as good a company as the Commercial, and Burbank replied that it was, and a much better company. Appellee then

stated to Burbank that he should place the $1000 with the Firemen's Insurance Company, Burbank stating at the time he would bring around the policy and receipt the following morning. This occurrence took place on the morning of March 1, 1892. Burbank proceeded on his way to the office of the Firemen's Insurance Company and filed an application for said insurance of $1000, and which was then and there accepted by the company, as claimed by appellee. At about five o'clock on the evening of the same day Kuessner had been in the rear part of his store cleansing the cloth of a lounge with gasoline, and when he had cleansed it, he and the boy assisting him started to carry the lounge to the forward part of the store, and in passing by a heated stove the same ignited, an explosion occurred, and a fire ensued which entirely destroyed his property then contained in the store. Early the following morning he went to the office of appellant and inquired if Burbank had placed the $1000 of insurance with the appellant company, and was informed that it had been so placed the day before. Appellee then returned to his store and there met Burbank, who was on his way to his office at the Firemen's Insurance Company. Kuessner asked Burbank if he had brought with him the policy. Burbank replied that he had not. Kuessner stated to Burbank that he desired the policy of $1000. Kuessner then went to the office of the company and asked a clerk to make him out a receipt for the premium, and that he would pay the same. The clerk in charge turned to his books and made out a receipt for $23, which Kuessner paid, took the receipt and proceeded again to his store. For a number of days after that time Kuessner made ineffectual efforts with A. C. Harding, the vice-president and adjuster of the company, to adjust and determine the amount of loss and damage. After the expiration of several weeks appellee and appellant each appointed an appraiser, who found and reported that there was a total loss of the entire stock of

goods, and the proof of said loss, amounting to $1813.94, was made and returned to the company on the 28th day of April, 1892, and accepted.

These are the material facts with reference to the application for the policy for $1000 on March 1, 1892, and on which the judgment of the trial court was entered as to the count declaring on the oral contract. On appeal to the Appellate Court for the First District the judgment of the trial court was reversed as to the policy for $300, and a *remittitur* was entered, whereupon there was a judgment of affirmance for the sum of $1072.22.

The contention of appellant on the trial was, that no oral contract of insurance had ever been made and that no application for insurance had been accepted. By the judgment of the Superior Court and the affirmance by the Appellate Court for the First District these facts are conclusively determined: that there was a valid oral contract for insurance entered into, that the loss accrued in such manner a liability was created, and the damage sustained was the sum of $1072.22. In this court it is urged that appellee should have declared on a refusal to issue a written policy, or have treated the policy as issued and sued thereon, and that he could not declare upon the oral contract as a binding contract of insurance. The application made is as follows:

"*Firemen's Insurance Company of Chicago:*

"Insurance is wanted by F. Kuessner, for one year, from February 28, 1892, to February 28, 1893, as follows:

| Company | Amount | Rate | Premium | Renewal No. | Policy No. |
|---------|--------|------|---------|-------------|------------|
| Firemen's | 1000 | 2.30 | 23.00 | 62468 | |

"$950 on stock, consisting chiefly of furniture and upholstering materials; $50 on store and shop tools, fixtures and implements, contained in frame building 139 Twenty-second street.

E. A. BURBANK, *Applicant.*"

It is clear from the evidence that this application was made out and delivered to the company before the loss

was incurred. There is conflict in the evidence as to whether or not it was accepted by the company on the day of its presentation. That it was on file, having been presented by Burbank in the forenoon, is beyond doubt. The adjudications of the trial and Appellate Courts are conclusive that it was accepted.

A suit to enforce the liability of an insurance company may be brought on the contract for insurance as well as upon the policy. The real cause of action is the same, in both the contract and policy. The measure of damages recoverable is the same, and the policy must be based on the contract of insurance and can contain no element different therefrom. Where an application for insurance is presented to a company, stating what is wanted and the terms, and its officer or any agent having authority to issue a policy says one will be issued on that application, the minds of the parties have met in the execution of a contract and a contract for insurance has been consummated. It is an oral contract. Though proposed in writing, the acceptance by parol and a promise to issue a policy thereon constitute an oral contract. Corporations authorized by their charters to make insurance and issue policies are not precluded from entering into parol contracts to effect the same object. Whatever doubts might have heretofore existed as to the validity of parol contracts of insurance, it is now settled such contracts are valid. *Trustees* v. *Brooklyn Fire Ins. Co.* 19 N. Y. 305; *Commercial Marine Ins. Co.* v. *Union Ins. Co.* 19 How. 321; *Ellis* v. *Albany City Fire Ins. Co.* 59 N. Y. 402; *Fire Ass. of Philadelphia* v. *Smith,* 59 Ill. App. 655; *Taylor* v. *Merchants' Fire Ins. Co.* 9 How. 390; *Hartford Ins. Co.* v. *Farrish,* 73 Ill. 166.

The evidence was sufficient to sustain the averments of that count of the declaration declaring on an oral contract. *Commercial Ins. Co.* v. *Hallock,* 3 Dutch. 645.

It is urged that there is no right of recovery because the premium was not paid before the loss occurred. The

evidence shows that appellee, on the morning after the fire, paid the amount owing for insurance and took a receipt therefor. It is insisted that he gave no notice of the loss before paying the premium, and thereby perpetrated a fraud on the insurance company. He owed no duty to disclose the loss before making the payment. His silence neither was to his benefit nor disadvantage. The observation and experience of business men are, that where applications for insurance are made and officers or agents with authority to issue policies have promised to issue the same, then collections of the premium are not, in practice, always made a condition precedent. Collections are often left to be made at the close of the month, and unless payment of the premium upon application is made a condition precedent to acceptance, a promise to issue the policy is a consummation of the contract. The mere failure to pay the premium in advance, where an application and a promise to issue a policy are made, will not defeat the right to recover on the contract of insurance, in the absence of a demand for the payment of the premium, made as a condition precedent. Any other rule would only furnish a cloak for fraud. There was here no demand for the payment of the premium before the acceptance of the risk. We therefore hold the contract was not rendered invalid by reason of the nonpayment of the premium. Our observation of methods of business causes us to hold the non-payment of the premium, under the circumstances under which the application was made and accepted, did not defeat a recovery on the contract.

Without entering into a discussion of the questions on the instructions given and refused, we recognize there are certain errors in the instructions given, but they are not such as should cause a reversal of the judgment.

Upon this record the judgment should be affirmed, and it is so ordered.                    *Judgment affirmed.*