Robert G. Mahon and Wanda J. Mahon, for the Use of William R. Bentcliff and Edward Z. Skubick, Plaintiffs-Appellees, v. State Farm Mutual Automobile Insurance Company and Robert Q. Soffel, Defendants-Appellants.

Gen. No. 48,535.

First District, Second Division.
June 29, 1962.
Rehearing denied September 11, 1962.

Meyers & Matthias, of Chicago (Donald L. Thompson, of counsel), for appellants.

Jurco, Damisch & Sinson, of Chicago (John W. Damisch and Nancy G. McDermid, of counsel), for appellees.

MR. PRESIDING JUSTICE BRYANT delivered the opinion of the court:

This is a chancery action for the reformation of an automobile insurance policy in order to reform the effective date of the policy from August 10, 1953 to August 8, 1953. The action was originally instituted in October, 1954 as a suit at law by plaintiffs Bentcliff and Skubick. The suit was amended into an action in chancery and Robert Mahon and Wanda Mahon were added as nominal plaintiffs, while State Farm's agent Robert Soffel was added as a defendant. The cause was

referred to a Master who took testimony, received evidence and filed his Report. Defendants' objections to the Report were overruled, and on April 13, 1961 the court entered a Decree reforming the effective date of the policy from August 10 to August 8, and entered judgments in favor of plaintiffs Bentcliff and Skubick for $5000 each against State Farm and ordered said defendant to pay all Master's fees and costs. The Master in his Report recommended no judgment against the agent Soffel, and no judgment was entered against him.

The Mahons are the insured parties under the policy in question. Skubick and Bentcliff are beneficial plaintiffs by virtue of judgments obtained against the Mahons for injuries and damages incurred in an automobile accident on August 8, 1953 involving an automobile driven by plaintiff Wanda Mahon. Mahons and their attorney had been notified that State Farm would not defend them in the then pending suit. A default judgment was entered against Mahon and his wife for $10,000, and Mahon testified in this suit that he knew nothing about the default judgment until his deposition was taken in the instant case on April 29, 1955.

Defendant Soffel, as agent for State Farm, from time to time prior to August 8, 1953, attempted to solicit auto insurance business from the Mahons. He regarded the Mahons as "quality prospects." On the eventful August 8, 1953 Soffel arrived at the trailer occupied by the Mahons at approximately 10:30 a. m. Mr. Mahon was the only person there since his wife had taken his wallet and gone to the store. Soffel testified before the Master that he filled out an application for auto insurance from information obtained from Mr. Mahon, and that Mr. Mahon reviewed the application for accuracy and signed his name. Soffel further testified that Mr. Mahon then told him that he could not give him the $11 premium because he had no money with him in the

trailer. On this point, however, Mr. Mahon testified that as soon as Soffel arrived at the trailer he told Soffel that he had no money because his wife had taken his wallet, and that Soffel nevertheless filled out the application and made the effective date of insurance coverage on the application to be August 8. Soffel agreed to come back later that day for the $11 premium but failed to do so because of trouble with his car. Mr. Mahon testified: "He said that he would be back later in the afternoon for the money and the reason that this was wrote up beforehand was so that I would be covered." Previously Mr. Mahon had also testified: "He wanted to sell me the insurance for the car now, and I told him my wife had just went shopping and she had taken all the money with her, and I didn't have any money, so I didn't see any reason for us to write up the insurance at that time. And he said, well, he said, 'We can write up the policy now so you will be covered, and I can come back in the afternoon and get the money.'" There is no doubt from the testimony that the application was completed at this time, except that the initial premium was not paid and the agent Soffel did not detach and give to Mr. Mahon a form at the bottom of the application, which is called a "binder" and which also serves as a receipt for the premium payment. The original date on the application indicating the effective date of temporary coverage, until the application is accepted or rejected by the company, was August 8, 1953.

Ironically, Mrs. Mahon was involved in an accident at 12:30 p. m. on August 8, while driving the automobile that was the subject of the insurance policy. The accident occurred after the application had been completed and Soffel had left the Mahon trailer.

On August 10 Soffel returned to the trailer and Mrs. Mahon asked him if the insurance coverage was in ef-

fect on August 8. Both Mr. and Mrs. Mahon testified that Soffel stated that the coverage was effective on August 8. Soffel's testimony was conflicting as to how he responded to the question. At one time he testified that he said that there was no coverage; at another point he testified that he said "I don't know." In any event Soffel testified that he left the Mahons and consulted his district agent and then returned to the Mahons. On August 10, he collected the premium and detached the binder and gave it to the Mahons. The latter testified that on this date Soffel gave them a piece of paper but they did not read it and did not know the contents thereof. The binder was not introduced by the Mahons at the hearing since it had been either lost or destroyed. Soffel was impeached in two regards when testifying as to a purportedly true and accurate copy of the binder. The Master found Soffel's testimony ambiguous and conflicting as to the date he placed on the original binder, and that the coverage enumerated in the purported copy was incorrect.

There is no doubt that originally Soffel placed August 8 on the application as the effective date of the policy. Soffel then unilaterally changed the date from August 8 to August 10 by superimposing the number 10 over the 8. This unilateral alteration was made after the August 8 accident involving Mrs. Mahon. Two significant facts stand out that should be emphasized here. First, Soffel did not have the altered date initialled by the insured even though the normal procedure was to have all changes initialled. Secondly, the application—even after the date was changed by Soffel—listed only one prior accident involving Mr. Mahon in December of 1951, and did not mention the accident of August 8, 1953, in spite of the fact that the reverse side of the application calls for an accident record of the insured. Under that portion of the appli-

374

cation there is no mention of the damage done to the Mahons' automobile as a result of the collision of August 8, nor is the accident itself mentioned in the application. As the Master concluded on this point: "It would appear that if the application was to be changed, as Soffel claims it was changed, the parties would have included all accidents that the Mahons had up to August 10, 1953, the date that Soffel claimed as the altered effective date."

The question presented here is whether there was an agreement between Mr. Mahon and agent Soffel that temporary coverage, pending acceptance or rejection of the application by the company, was to begin on August 8, and this in turn depends on the intention of the parties as evidenced by their conduct.

A policy of insurance dated August 10, 1953 was subsequently issued to Robert Mahon on August 20, 1953. Defendant admits that temporary insurance was extended but contends that the temporary insurance was limited to the period between August 10 and August 20 by virtue of the written binder.

There is strong and convincing evidence that the parties agreed to begin temporary insurance coverage on August 8. This intention coupled with the agent Soffel's authority to extend temporary insurance (by a variety of methods including oral agreements, although the issuance of the written binder was the usual method) to quality prospects, which Soffel regarded the Mahons as being, resulted in the written instrument, which the Master reformed to conform to the actual intent of the parties. The fact in itself that the premium was not yet paid does not negate this agreement for temporary coverage, and the right to recover on the policy would not be defeated. Firemen's Ins. Co. v. Kuessner, 164 Ill 275, 281, 45 NE 540; cf. Cohn v. Mechanics & Traders Ins. Co., 175 Ill App 594, 598.

It is plausible that Soffel did not detach the binder on August 8 because the binder also served as a receipt while at the same time extending to the Mahons temporary insurance coverage beginning immediately. The Master regarded the testimony of both of the Mahons as consistent and that it should be given credence, whereas he regarded the testimony of Soffel as inconsistent and unreliable. The Master properly admitted parol evidence to explain the unilateral changing of the effective date without the consent of the insured. Parol evidence is admissible in a court of equity to show the real agreement between the parties in variation of the terms of the written agreement and when a mistake is thus corrected the contract will be enforced as corrected. Mercantile Ins. Co. v. Jaynes, 87 Ill 199, 202; Krabbenhoft v. Gossau, 337 Ill 396 at 408, 409, 169 NE 258; 29 Am Jur, Reformation §§ 340, 341; 76 CJS Reformation § 83(b).

Plaintiff does not contend that the agreement entered into on August 8, 1953 was the policy of insurance itself. Therefore, defendants' argument that the agent Soffel had no authority to issue policies of insurance is beside the point. Soffel was authorized to solicit on a quality basis and to extend temporary coverage by a variety of methods. Plaintiff does maintain, and this was supported by competent evidence before the Master, that there was an agreement for temporary coverage as of August 8, 1953, and that this was to be a term of the policy itself.

The admitted practice of agent Soffel, and company policy as described by both Soffel and Charles Foreman, general underwriting superintendent, prove that there was authority of the agent to bind the company on the completion of the application and without approval of the risk by the company.

376

Neither of the Mahons agreed to the altered date. The binder-receipt which Soffel gave to the Mahons on August 10 was not produced; no carbon was produced. The purported true and correct copy was shown to be incorrect as to the coverage designated and as to the day on which the application was written. Soffel was thus impeached as to the contents of the binder.

■ The theory on which this case rests is that the agent Soffel had authority to provide temporary insurance coverage pending the acceptance or rejection of the risk by the company, that there was a meeting of the minds on all the essential elements of the temporary coverage, and that the intention of the parties as evidenced by their conduct was that the coverage commenced immediately on August 8, 1953. Reformation of the policy and enforcement of its terms is then the proper form of relief because this effectuates the agreement between the parties. Whether the policy is later cancelled for some other reason is of no consequence here.

■ A court of chancery may reform an instrument to correct a mistake and to prevent fraud so as to make the instrument express the actual intent of the parties. Hermann, Reformation and Recission, 1960 Ill LF 1.

As stated in Stoltz v. National Indemnity Co. of Omaha, Neb., 345 Ill App 495, at 500, 501, 104 NE2d 320:

"Where the contracting parties to a policy of insurance make a mistake and the policy fails to express the real contract between them, and provisions other than those intended are inserted or omitted, equity has the right to grant relief by reformation of the contract. Beddow v. Hicks, 303

377

Ill App 247; German Fire Ins. Co. v. Gueck, 130 Ill 345; Home Ins. & Bank Co. v. Myer, 93 Ill 271."

The power of reformation for various reasons is clearly and forcefully stated in Beddow v. Hicks, 303 Ill 247, at 257, 258, 25 NE2d 93:

> "Where an agent is authorized to act, and through his mistake or fraud, the policy fails to express the real contract between the parties, or, if by inadvertence, negligence or mistake of the agent, provisions other than those intended are inserted, or stipulated provisions are omitted, there is no doubt as to the power of the court of equity to grant relief by reformation of the contract. German Fire Ins. v. Gueck, 130 Ill 345, 350, 23 NE 112; Gray v. Merchants' Ins. Co. of Newark, 113 Ill App 537, 542; Vial v. Norwich Union Fire Ins. Soc. of Norwich, Eng., 172 Ill App 134, 139."

See also Metropolitan Life Ins. Co. v. Henriksen, 6 Ill App2d 127, at 135, 126 NE2d 736.

 Defendants have spent much of their brief arguing that the instant case, if there is any justification for it at all, should be at law on an oral contract for temporary coverage rather than in equity for reformation of the policy. This argument undoubtedly caused trouble below before the Fourth Amended Complaint stated a good cause of action, but the argument is not persuasive in view of the facts presented here and the theory on which this case rests. A suit will lie to enforce liability whether the suit is brought on the preliminary contract for insurance or on the policy itself and the real cause of action is the same under both theories. Firemen's Ins. Co. v. Kuessner, 164 Ill 275, at 280, 45 NE 540; Cottingham v. National Mut. Church Ins. Co., 290 Ill 26, at 33, 125 NE 822; cf. Welch v. Northern Assur. Co., 223 Ill App 77.

378

According to the testimony the data in the policy is routinely copied from the application. Therefore defendants' contention that the policy controls and supersedes the application, in the event there is a discrepancy or error, is unacceptable. Quite to the contrary, an error, or unjustified and unilateral alteration such as is presented here, could only be corrected by reference to the data contained in the application. The policy with the data routinely copied did not express the intention and agreement of the parties. The alteration need not be characterized as fraudulent in order to justify reformation, and the agent Soffel's inequitable conduct in unilaterally changing the date without the insured's consent justifies reformation of the policy to make the effective date conform to the original intention of the parties. Beddow v. Hicks, supra; 29 Am Jur, Insurance, §§ 340, 341; cf. German Fire Ins. Co. v. Gueck, 130 Ill 345, 23 NE 112.

Defendants' final contention that plaintiffs did not act to mitigate damages is inapplicable here. Plaintiffs cooperated with the insurer: proper notice was given, the accident report form was filled out with the help of agent Soffel, complete statements were given to the adjustor Carl Ebert, the Mahons never saw Bentcliff and Skubick after the accident, and the summons and other papers concerning the suit were sent to State Farm. There was no duty imposed on the insured to defend against the initial suit, and a refusal by an insurer to defend renders it liable for any damages sustained as a direct result of the breach of contract. Appleman, 8 Ins. Law & Practice § 4689. The rule that a person who accepts and retains possession of an insurance policy is bound to know its contents does not apply to an equitable proceeding for reformation and the insured's mistake in failing to discover the terms of the policy is not negligence as a matter of law. Stoltz v. National Indemnity Co., supra

at 502, citing Hould v. Maryland Cas. Co., 83 NH 474, 144 A 261, and Heath Delivery Service v. Michigan Mut. Liability Co., 257 Mich 482, 241 NW 191.

The decree reforming the effective date of the policy from August 10 to August 8 and entering judgments against defendant State Farm is affirmed.

Judgment affirmed.

FRIEND, J., concurs.

BURKE, J., dissenting:

The fourth amended complaint, on which the validity of plaintiffs' action rests, attaches the alleged agreement as Exhibit "A" and concludes that it "constituted a full and complete contract for the purchase of the insurance by the plaintiff . . . appearing . . . upon the face of said agreement." Plaintiffs endeavored to sustain the judgment by asserting that there was on August 8, 1953, in effect a "valid offer and the acceptance for temporary coverage." There was no allegation in the fourth amended complaint that any offer or proposal of any kind made to Mahon was accepted by the defendants on August 8, 1953, or at any other time. Without this allegation the complaint stated no cause of action either at law or in equity. See Morris v. Goldthorp, 390 Ill 186, 60 NE2d 857. The binder which had been attached and was a part of the application was not detached and delivered to Mahon until August 10, 1953. Plaintiffs now seek the benefit of the terms of a written binder, the contents of which, according to their testimony, were known to them and which they failed to produce and introduce into evidence. At the hearing the Mahons denied the delivery to them of any such binder, but now seek the benefit thereof. The temporary insurance provided beginning August 10, 1953, came into being by virtue of the binder and not

380

by virtue of the application, Exhibit "A." If the application provided insurance to Mahon on August 8, 1953, there was no application left for State Farm to review. There is a fatal variance in the allegations of the fourth amended complaint. It is obvious that had plaintiffs proceeded on the theory now expressed, the proofs could have been immeasurably curtailed.

Plaintiffs' theory presented here is that the temporary insurance became effective August 8, 1953. Such an action could only be brought in a court of law for a breach of contract, oral or written. The only written document signed by Mahon and Soffel, the agent, was an application for insurance. The binder, which was a part of the application, was not detached and delivered to Mahon until August 10, 1953. Consequently, no valid insurance, temporary or otherwise, became effective until the delivery of the binder. An application for insurance is not itself a contract, but a proposal requiring acceptance by the insurer through someone actually or apparently authorized to accept the same to give it effect as a contract. See Palmer v. Bull Dog Auto Ins. Ass'n, 294 Ill 287, 292, 128 NE 499; 7 Appleman Insurance Law and Practice, Sec 4265, p 31. The authorities say that in the absence of a binder, oral or written, for present temporary insurance the applicant is not covered by insurance and will not be covered until the application is accepted.

The policy of insurance was issued and delivered to the named insured August 20, 1953, in accordance with the written application dated and signed by him on August 8, 1953, after the application had in the regular course of business been submitted and accepted by the insurer. Between August 10 and August 20, 1953, Mahon was covered by temporary insurance by virtue of a written binder accepted and delivered by the agent to him on August 10, 1953, after the consideration

381

designated therein was paid by Mahon. This binder became ineffective under its terms after it was superseded by the policy. The arguments of plaintiffs are premised on the assumption that Exhibit "A" was a contract, agreement, insurance policy or instrument binding on the insurer to the same effect and force as the policy of insurance itself which was dated August 10, 1953. Plaintiffs thus seek to convert the application for insurance into a valid contract of insurance. If this argument be accepted, then the application, Exhibit "A," should be reformed and not the policy of insurance. The proof is positive and uncontradicted that on August 10, 1953, Soffel, the agent, deliberately changed the date of the application from August 8 to August 10, 1953. Plaintiffs apparently realize that they cannot reform the application itself.

It is interesting to note that plaintiffs switched their form of action from law to chancery, back to law, then chancery again and finally to a fourth amended complaint which is ambiguous and states no cause of action either at law or in equity. The pleadings and the proofs show clearly that plaintiffs have no case. The decree should be reversed and the cause remanded with directions to dismiss the cause for want of equity.