AMERICAN GLASS COMPANY, a corporation, Plaintiff-Appellant,

v.

MICHIGAN MUTUAL LIABILITY COMPANY, a corporation, Defendant-Appellee.

No. 14169.

United States Court of Appeals Seventh Circuit.

Feb. 11, 1964.

George C. Rabens, Chicago, Ill., for plaintiff-appellant.

John M. Moelmann, Joseph H. Hinshaw, Oswell G. Treadway, Chicago, Ill., for defendant-appellee.

Before DUFFY, SCHNACKENBERG and KILEY, Circuit Judges.

KILEY, Circuit Judge.

The issues raised by the appeal of plaintiff, American Glass Company, in this diversity case are whether the district court erred in deciding: that defendant's policies, dated March 15, 1961, insuring plaintiff's work on a construction project at O'Hare International Airport in Chicago, should not be reformed; and that from the circumstances defendant is not estopped to deny liability. We think the court did not err.

The facts are as follows: Malan Construction Corporation was granted the general contract, RB–28, in 1960 for improvement work at O'Hare International Airport by the City of Chicago. Malan subcontracted a portion of the work to Cupples Products Company on September 16, 1960, and another portion to plaintiff on October 25, 1960. Cupples subcontracted a portion of its work to plaintiff on December 15, 1960. It was while plaintiff was working on the Cupples subcontract, on March 10, 1961, that equipment "collapsed" injuring several workmen. Plaintiff's demand for benefits under its policies with defendants was denied. This suit followed.

Defendant issued "Master" policies to Malan, insuring the operations of Malan and its "subcontractors and their subcontractors as hereinafter *designated.*" (Our emphasis.) When Malan let a subcontract it would notify the Ostheimer Agency [1] who would then write the subcontractor for information to file an application with defendant for coverage of the subcontract. Upon acceptance by defendant the subcontract was included under the "Master" policies.

After Malan "designated" plaintiff as its subcontractor, Ostheimer wrote plaintiff for necessary application information, including plaintiff's starting date. On November 22, 1960, plaintiff responded that the "approximate date * * * is March 15, 1961." There was no further correspondence between plaintiff and Ostheimer until March 1, 1961, when Ostheimer wrote that it had "bound coverage" with defendant covering plaintiff "under Contract RB–28 with Malan Construction Corp." and the "policies should be forthcoming." The policies sought to be reformed issued April 19, 1961, effective March 15, 1961.

■ The district court gave an excellent oral statement of the facts and found [2] that circumstances surrounding the exchange of correspondence precluded reading Ostheimer's March 1 letter as binding defendant to coverage of plaintiff's sub-subcontract with Cupples, and that defendant was bound only to coverage of plaintiff's subcontract with Malan. Having no "definite and firm conviction that a mistake has been committed," we cannot say the district court finding was "clearly erroneous." Footlik v. United States, 323 F.2d 635, 636 (7th Cir. 1963).

In its November 22, 1960 letter to Ostheimer plaintiff gave the necessary information for inclusion under the "Master" policies, listing the insurance it al-ready carried, and then informed Ostheimer of its "additional contract * ∗ as subcontractor to Cupples" and asked for a "quotation" for its required insurance "over and above our coverage listed * * *." It assumed that "under the terms of the contract, Malan would be probably paying [3] for any 'Master' policies unless, of course, we give you the insurance for this increased coverage." This letter indicated to the district court that plaintiff "was not sure" it wanted the coverage of work under the Cupples sub-subcontract.

Malan was requested, but refused, to *designate* plaintiff as a subcontractor of Cupples so as to bring the sub-subcontract under the "Master" policies. We cannot see how an Ostheimer letter of February 17, 1961 to Cupples, stating "coverage is binding for any subcontractor on this project from the date he actually begins his work," changes the situation. This contemplates *designation* of the subcontractor. The district court need not from all this have distilled an intention of defendants to insure plaintiff's work under the Cupples sub-subcontract.

■ Plaintiff was required to prove as a basis of reformation that it came to an understanding with defendant for insurance of the Cupples sub-subcontract, but that in reducing it to writing the instrument as written did not conform to the contract agreed upon. Harley v. Magnolia Petroleum Co., 378 Ill. 19, 37 N.E.2d 760, 765, 137 A.L.R. 900 (1941). Since the court found no agreement, that work under the Cupples sub-subcontract be covered, it did not err in concluding plaintiff's suit should fail. Mahon v. State Farm Mut. Ins. Co., 36 Ill.App.2d 368, 184 N.E.2d 718 (1962).

■ Finally we are not convinced that plaintiff has shown by clear and convinc-

1. For purposes of this appeal the Ostheimer Agency will be assumed to be defendant's agent.

2. Not expressed as "findings of fact" but sufficient under Rule 52(a), Fed.R.Civ.P. 52(a).

3. Pursuant to package insurance agreement under which Malan guaranteed payments of premiums when a subcontractor was included in the package program.

ing evidence, Cravens v. Hubble, 375 Ill. 51, 30 N.E.2d 622 (1940), that defendant fraudulently drafted its policies so as to exclude from its coverage the accident of March 10.

Since we agree with the district judge that the work under the Cupples sub-subcontract was not included in the coverage of the policies issued April 19, 1961, there is no need to determine whether the court's finding that the policy was not effective March 1 was clearly erroneous.

We cannot find that the district court's conclusion, that "the evidence * * * does not justify" a finding of estoppel, is erroneous.

■■ Plaintiff did not secure insurance "over and above" the insurance it already carried to cover its work on the Cupples sub-subcontract, but that failure has not been shown to be caused by detrimental reliance on defendant's conduct. Furthermore, a party cannot claim estoppel where he knows or has the means of knowing that the other party's actions or omissions might be to its detriment. Lowenberg v. Booth, 330 Ill. 548, 162 N.E. 191, 194–195 (1928). Here plaintiff, through its subcontract with Malan and its sub-subcontract with Cupples, had full knowledge of the insurance requirements, knew that it would have to be "designated" before being included under the "Master" policies, and knew that it did nothing to secure coverage of its work on the Cupples sub-subcontract after its letter of November 22.

When Cupples questioned the necessity of obtaining coverage under the "Master" policies Ostheimer wrote its letter of February 17, 1961, in which it told Cupples its coverage was in effect "since the day you commenced operation." Then it added: "In fact, coverage is binding for any subcontractor on this project from the date he actually begins his work." This letter to Cupples is of no avail to plaintiff in the absence of a showing that it knew of the letter and relied upon it to its detriment.

■ Plaintiff argues in effect that defendant is estopped from extending coverage to plaintiff in view of the following facts: The city's contract with Malan, pursuant to city ordinance, in article 21, forbade Malan or any subcontractor [4] from starting work on the O'Hare project "until he has obtained and paid for insurance required by" Malan; the subcontracts required each subcontractor to carry insurance up to a certain limit; and defendant knew of these requirements.

We see no merit in this contention, because if it were sustained the result would be in conflict with the facts of the case: defendant would be required to provide coverage for all contractors whether or not they had adequate outside insurance, when, in fact, if they already carried sufficient insurance, as Cupples did, they were not obliged to participate in the package program; and Malan would be obligated to guarantee plaintiff's premium payments to defendant, when in fact it had refused to do so with respect to plaintiff's sub-subcontract with Cupples.

United Pacific Ins. Co. v. Meyer, 305 F.2d 107 (9th Cir. 1962), relied on by plaintiff does not support the contention. There the court affirmed the trial court's finding that the insurance company " 'bound and committed itself and warranted that it had provided * * * insurance' which would protect subcontractors." 305 F.2d at 109. The general contractor's performance bond, obtained pursuant to his obligation to insure himself and his subcontractors, covered "all operations" under the general

---

4. The general contract provided in pertinent part:

"The Contractor shall not commence work under the contract until he has obtained, at his expense, all insurance required under this Section * * *.

*　　*　　*　　*　　*

"The Contractor shall require his Sub-Contractors and their Sub-Contractors to take out and maintain insurance of such nature in such amounts as Contractor deems necessary to protect himself."

contractor's contract with the State of Idaho. In the case before us the district court found that "neither the defendant nor Ostheimer warranted * * * that they would insure the risks under the sub-subcontract." Only the subcontractors "designated" were covered.

In Jeske v. General Accident Fire & Life Assurance Corp., 1 Wis.2d 70, 83 N.W.2d 167 (1957), the court found the insurance company was estopped from denying liability, but only after it had found that the policies should be reformed. The case is inapposite.

For the reasons given the judgment is affirmed.