Floyd Brosam and Orean Brosam, d/b/a Brosam Brothers, a Partnership, Plaintiffs-Appellees, Cross-Appellants, v. Employer's Mutual Casualty Company, Defendant-Appellant, Cross-Appellee.

**Gen. No. 10,615.**

Fourth District.

July 20, 1965.

Rehearing denied August 16, 1965.

William E. Larrabee, of Craig & Craig, of Mattoon, for appellants.

Thomas J. Logue, of Mattoon, for appellee.

TRAPP, J.

The Circuit Court of Coles County, Illinois, in a suit for reformation of a public liability insurance policy, brought by Floyd Brosam and Orean Brosam, partners, against Employer's Mutual Casualty Company, entered a decree the effect of which was to reform the insurance policy to extend the liability coverage for property damage to horses in the care, custody and control of the insured partners for breeding purposes. The Circuit Court also entered judgment in favor of the plaintiff partners and against the defendant insurance company in the amount of $2,525.60, being the amount of a judgment that had been rendered against the partners for damages for the death of a stallion resulting from alleged negligence of the partners while

the stallion was in their care, custody, and control for breeding purposes. The Circuit Court denied a claim of the plaintiff for $1,000 legal expenses in defending the negligence suit and a claim of $500 for alleged vexatious delay provided by Ill Rev Stats 1963, chap 73, sec 767.

Both parties appeal from the decree and judgments of the Circuit Court.

The written insurance policy was delivered to the plaintiff after the incident which gives rise to this action. Such policy, which defendant claims is controlling of the issues in this case, contained exclusion of liability for damage to property rented to the insured, or in the care, custody or control of the insured.

Defendant, in seeking to reverse the decree of reformation of the policy and the money judgment contends (1) that the judgment creditor in the negligence suit against the partners is the sole real party in interest and is a necessary party to the suit, (2) that the statute of frauds presents a defense to the action, (3) that parol evidence is inadmissible to vary the terms of the written insurance policy as delivered, (4) that the plaintiffs accepted the terms of the written insurance policy as delivered, (5) that the evidence upon which reform of the insurance policy was based consisted of declarations of an insurance solicitor whose authority was not established by the evidence and certain letters and correspondence which were not properly authenticated.

■ The defendant's motion to dismiss the Fourth Amended Complaint is based upon section 48 of chapter 110, Ill Rev Stats, 1963, and alleges that the complaint shows on its face that plaintiffs have no interest in the cause of action and that only the judgment creditor has any interest in the cause of action. The trial court properly denied the motion. The cases

186

cited, Holowaty for Use of Cherka v. Prudential Ins. Co. of America, 282 Ill App 584 at 588; Hays v. Country Mut. Ins. Co., 28 Ill2d 601, 192 NE2d 855, illustrate the fact that a garnishment proceeding is sometimes a proper remedy for a person who may be entitle to the proceeds of another's insurance. The question here presented is not discussed in either of those cases. At common law in Illinois, it was well established that if a proper party brought suit he need name no use party or real party in interest and that naming such party was surplusage. Lee v. Pennington, 7 Ill App 247 on 252; Schiff v. Supreme Lodge Order of Mut. Protection, 64 Ill App 341 on 343; Brownell Improvement Co. v. Critchfield for Use of Mexican Asphalt Paving Co., 96 Ill App 84 on 90; Continental Cas. Co. v. Maxwell, 127 Ill App 19 on 23; Cuna v. Supreme Tribe of Ben Hur, 157 Ill App 138 on 144; Smith v. Vandalia R. Co., 188 Ill App 426 on 429; People v. Egan, 239 Ill App 61 on 67; Grove v. Board of Sup'rs of Platt County, 246 Ill App 241 on 246; Stefanich v. Richard, 314 Ill App 183 on 186, 41 NE2d 104; Chadsey v. Lewis, 1 Gilm (6 Ill) 153, 159; Atkins v. Moore for Use of Cool, 82 Ill 240, 241; Schott v. Youree, 142 Ill 233, 241, 31 NE 591; Tedrick v. Wells, 152 Ill 214 on 217, 38 NE 625; Knight v. Griffey, 161 Ill 85, 87, 43 NE 727.

Illinois does not have a "real party in interest statute." Smith-Hurd, Ill Ann Stats, chap 110, sec 22, "Historical and Practice Notes," second paragraph; also "Law Review Commentaries" quoting William L. Eagleton, June 1936, 3 Univ of Chicago Law Review 597, 603 as follows: "The Illinois Civil Practice Act is almost unique in omitting the 'real party in interest' provision." Section 1000 of the Insurance Code, Ill Rev Stats, 1959, chap 73, par 1000, attempts by regulation of the policies of casualty companies to provide for direct suit in case of insolvency of the insured.

■ Even where a right of subrogation may exist, the person having an interest in the suit (here the contract of insurance) may bring the suit in his own name. Osgood v. Chicago & N. W. Ry. Co., 253 Ill App 465 on 466; Ebel v. Collins, 47 Ill App2d 327, 198 NE2d 552 on 555.

Additionally, the facts stated in the motion to dismiss are not correct. It does not appear on the face of the complaint that the judgment creditor is the only one having any interest in the insurance. The complaint very clearly alleges that the defense of the suit by the now judgment creditor was tendered to the insurance company, that the defense was refused and the plaintiff was damaged thereby to the extent of $1,000 costs of defending the suit. The complaint also prays damages of $500 for vexatious delay in payment under section 767 of chapter 73, Ill Rev Stats, 1963.

If there is a provision in the liability policy of the defendant allowing direct suit by the judgment creditor, the fact does not appear in the motion to dismiss or anywhere in the record, so far as we are advised. In its brief defendant says that its obligation under Coverage C of the policy is "to pay on behalf of the named insured all sums which the insured shall become legally obligated to pay."

This point could well have been raised by a motion to make judgment creditor a party. This was not done. A motion to dismiss the suit was filed and was properly denied.

■■ The proceeding to reform the insurance policy was properly the burden of the insured and not the burden of the judgment creditor. This is an equity proceeding. In our opinion the judgment creditor would have been a proper party. The defendant should have a right to require that payment of the judgment in favor of Neal Strole against the plaintiffs would be a satisfaction of so much of the judgment in this

case as is based upon the earlier judgment. Balch v. English, 247 Ill App 429 on 435. See also London & Lancashire Indemnity Co. of America v. Tindall, 377 Ill 308 on 315, 36 NE2d 334.

Not having sought to bring the judgment creditor in by motion to add him as a party, the defendant may still, if a difficulty arises, require the satisfaction of all claims arising out of the transaction with one payment.

■ The defendant contends that the suit is a suit to charge the defendant with the debt, default or miscarriage of another and that the Statute of Frauds, chap 59, sec 1, Ill Rev Stats, 1959, requires the promise in reference thereto to be in writing. If the Circuit Court was correct in the decree reforming the policy then there would be a writing to charge the defendant with the insured's debt, default or miscarriage.

■ The defendant urges that parol evidence is inadmissible to vary the terms of the written contract which it contends is the policy of insurance delivered September 1, 1960. There is no doubt that parol evidence is admissible to show the real agreement between parties when a mistake has been made in the written contract and the evidence is for the purpose of making the contract conform to the original intent of the parties. Mahon v. State Farm Mut. Automobile Ins. Co., 36 Ill App2d 368 on 376, et seq., 184 NE2d 718, and cases therein cited.

■■ While admitting that in case of mutual mistake a policy may be reformed on the basis of parol evidence, the defendant argues that the evidence must be clear and convincing and cites Hyman-Michaels Co. v. Massachusetts Bonding & Ins. Co., 9 Ill App2d 13 at 26–27, 132 NE2d 347; Pearce v. Osterman, 343 Ill 175 at 176, 175 NE 416; Richer v. Catholic Order of Foresters, 344 Ill App 200 at 203, 100 NE2d 807; Harley v. Magnolia Petroleum Co., 378 Ill 19, 37 NE2d 760, and other

189

authority. The principles cited are correct but they are, in the authorities cited, applied to various fact situations which are not closely analogous to the situation here presented.

Defendant also contends that plaintiffs accepted the policy and that their failure to read the same presents no excuse for failure to know the terms and cites Richer v. Catholic Order of Foresters, 344 Ill App 200 at 203, 100 NE2d 807; Spence v. Washington Nat. Ins. Co., 320 Ill App 149 at 155, 50 NE2d 128; Rozgis v. Missouri State Life Ins. Co., 271 Ill App 155 at 157. Plaintiffs' answer that failure to read a policy is not a bar to reformation citing Mahon v. State Farm Mut. Automobile Ins. Co., 36 Ill App2d 368 at 379, 184 NE2d 718, and other authority. All cases depend on the particular facts and here the unique fact situation is that there was no written binder and the accident occurred almost three weeks prior to the delivery of the written policy. Additionally, as will be noted, the insured, the agent and the agent's superior all thought that coverage existed after the loss and after the issuance of the written policy. Under the evidence in this case it could equally well be said that the agent didn't read the policy as that the insured did not.

█ Proceeding to the merits, it should be observed that it is not the function of the Appellate Court to pass upon the legal questions involved in an abstract sense, but rather to determine whether the decree of the Circuit Court is contrary to law or contrary to the manifest weight of the evidence.

█ The Circuit Court found that the evidence clearly and convincingly proved that the written policy of insurance, delivered after the claim arose, did not reflect the actual agreement of the parties and that in order to reflect the actual agreement of the parties, the liability coverage would have to be extended to cover horses in the care, custody and control of the in-

190

sured for breeding purposes. Unless this decree is contrary to law or contrary to the manifest weight of the evidence, it is the duty of this court to affirm it. Stoltz v. National Indemnity Co. of Omaha, Neb., 345 Ill App 495, 501–502, 104 NE2d 320; Hyman-Michaels Co. v. Massachusetts Bonding & Ins. Co., 9 Ill App2d 13 at 21, 132 NE2d 347; Illinois Law and Practice, Vol 2, Appeal and Error, sec 779, pp 729–30.

The defendant asserts that the written policy containing the exclusion coverage as to property rented to the assured or in the care, custody or control of the insured is the contract involved. The defendant presented no evidence except the written insurance policy. The defendant reasons that since the only testimony as to representations made to plaintiffs concerned representations of a "soliciting agent" and an unidentified company engineer and the authority of these persons was not shown, no competent evidence exists of representations by anyone representing the company of authority to vary the written terms of the contract. Defendant cites provisions 17 and 22 of the written policy to the effect that the policy embodies all agreements between the insured and the company.

In answer to plaintiffs' contention that the loss occurred during the period of a preliminary binder, defendant cites authority to the effect that the binder is subject to all the terms and conditions of the usual form of policy subsequently to be issued. Defendant further argues that plaintiffs accepted the policy as delivered and they are therefore bound by the policy terms even though the policy may be different from the one sought.

 Commencing with the written policy as the assumed contract, the defendant argues that there is no evidence that any authorized agent of the defendant made any representations to the plaintiffs. Defendant contends that the burden is upon the person who asserts

191

the agency to prove it and to show the authority of the agent and cites Dean v. Ketter, 328 Ill App 206 at 210, 65 NE2d 572; Kuhn v. Pulaski County Mill & Elevator Co., 188 Ill App 279, and 1 Illinois Law and Practice, Agency, sec 15, page 676. Defendant further contends that the fact of agency and the authority cannot be proved by what the agent said or did, but only by some word or act of the principal. As Authority, defendant cites Sacks v. Helene Curtis Industries, Inc., 340 Ill App 76, at 86, 91 NE2d 127; Merchants Nat. Bank of Peoria v. Nichols & Shepard Co., 223 Ill 41 at 48–49, 79 NE 38; Sommerio v. Prudential Ins. Co. of America, 289 Ill App 520 at 523–24, 7 NE2d 631; Dodson v. Loaleen Mut. Benefit Ass'n, 247 Ill App 283 at 286; and Patton v. Young, 233 Ill App 515 at 518. Finally, defendant argues in reference to the question of agency that the most that might be inferred from the evidence is that Darrell Eaton was empowered to place orders for insurance with the defendant. Defendant then says that a soliciting agent has no power to waive or enlarge the terms, conditions and exclusions of a policy of insurance and cites Spence v. Washington Nat. Ins. Co., 320 Ill App 149, 50 NE2d 128; Rozgis v. Missouri State Life Ins. Co., 271 Ill App 155 at 157; Sommerio v. Prudential Ins. Co. of America, 289 Ill App 520 at 523–4, 527, 7 NE2d 631; Niedringhaus v. Aetna Ins. Co., 235 Ill App 335 at 336–337; Queen Ins. Co. v. John Spry Lumber Co., 138 Ill App 620 at 624; Pardon v. Wasvary, 249 Ill App 327; and 1957 U of I Law Forum, 522.

The general legal principles for which these cases are cited are supported by the authorities cited. It is necessary, however, to examine the evidence in the record to determine the extent of the application of those principles to the case the trial court was called upon to decide.

The evidence clearly shows that Darrell Eaton was an agent of the defendant insurance company. He is designated "authorized representative" in the policy which the defendant asserts is the whole contract. There is no evidence to establish that Darrell Eaton was only a "soliciting agent" as assumed by defendant's counsel. Neither is there any evidence that the sole authority of Darrell Eaton was to "place orders for insurance with defendant" as contended in defendant's brief. Even an authority to countersign policies as an "authorized representative" exceeds the stated authority to place orders with defendant. Nor do the decided cases actually limit the authority of a soliciting agent, if that limitation were established, to placing orders with the defendant company.

An agency to sell insurance and to countersign insurance policies of necessity carries with it many implied routine powers which could be expected in the normal course of business. The minimum that would be expected of a soliciting agent would be an authority to explain the lines of insurance sold by the company, to take applications, to quote premium rates and to advise of the general method of the company in doing business.

Plaintiffs were in the contracting business as their main business, and conducted some farming operations as a sideline. Plaintiff Floyd Brosam testified without contradiction that in the latter part of May or early June, 1960, at the Coles County Fair, in the presence of another witness, Clarence Pfifer, and Darrell Eaton, the agent, he, Floyd Brosam had a conversation with Darrell Eaton about the fact that Brosam was conducting a horse breeding operation and was using other people's horses. Plaintiff testified that he asked the agent, Darrell Eaton, if he could get insurance coverage on breeding activities of such nature. He testified

that Eaton said he could get a blanket policy to cover the contracting operations and the farm operations and it would be cheaper than getting a separate policy, and, he said further that he would get an engineer down to go over it. He testified that about June 27, 1960, at the Bevers home, Darrell Eaton said they could get a policy that would cover him with any horse they had in their custody or control. Plaintiff testified that Eaton said he was covered and that the engineer would come down and talk about combining our other policy with breeding horses. He testified that the engineer came down and also advised them that they were covered for horses in their care, custody and control. This testimony is uncontradicted.

It can hardly be doubted that a sales agent would know who was an authorized engineer for the insurance company. It certainly is placing too great a burden on the insured to establish the name of the engineer and the extent of this authority. It would also be a normal assumption that an agent of a company authorized to sign policies would know the person in the company he might write for confirmation of coverage. Plaintiff's Exhibit 9 is an interoffice memo dated July 5, 1960, on Employer's Mutual Casualty Company Letterhead from Duane A. Borski, Chicago, to Darrell G. Eaton regarding the Orean and Floyd Brosam liability application stating, "coverage may be considered bound as requested in your memo of June 27, 1960 subject to favorable engineering inspection."

Apparently, the memo of June 27, 1960, from Darrell Eaton to Duane A. Borski was lost sometime between its receipt in the Chicago office of the company and the time of the trial. There is evidence, however, from which the trial court might have drawn reasonable inferences as to what it contained. Plaintiff's Exhibit 10 is an interoffice memo on Employer's Mutual Casualty Company letterhead, dated August 10, 1960,

194

slightly more than a month after the original memo, from Darrell G. Eaton to Duane Borski on the subject of "Brosam Bros. Liab. Comp." as follows:

"Sunday 8–7–60 Floyd had a fellow's stud horse out to his place, to get his mare bread, she was not ready and kicked the stud and broke his leg. They have taken him to animal hospital, but don't know for sure yet, the outcome, whether he'll have to be killed or leg can be fixed. He was a valuable animal. Is not this covered under this policy. Please advise, thanks Darrell."

Plaintiff's Exhibit 11 is an interoffice memo on Employer's Mutual Casualty Company letterhead dated August 17, 1960, from Duane A. Borski to Darrell G. Eaton which refers to subject, "Brosam Bros. A N d 3-0464 Neal Strole," and says:

"The type of situation outlined in your memo of August 8, 1960 would be covered under the farm liability policy or any other general liability policy written to cover farm operations. Payment of such a claim, of course, would depend entirely upon proof of our insured's negligence. In looking through our files, however, we are unable to find any record of such a policy in his name."

Plaintiff's Exhibit 12 is an interoffice memo on Employer's Mutual Casualty Company letterhead dated August 18, 1960, from Darrell G. Eaton to Duane Borski on the subject, "Brosam Bros. Comp. Gen. Liab.," which states:

"I had letter from you 5 July 60 where you say coverage be considered bound subject to favorable engineering inspection. Please check. It says Orean and Floyd Brosam."

There is a logical inference that an additional exchange of information took place between the letter from Darrell Eaton to Duane Borski on August 10, 1960, and the reply from Duane Borski to Darrell Eaton on August 17, 1960, because the latter letter refers to Neal Strole, the owner of the stud whose name was not mentioned in the Eaton letter.

From the foregoing, the trial court could properly infer that the agent, Darrell Eaton, knew the person in the company with whom to confirm coverage, that coverage had been confirmed, that both Darrell Eaton and Duane Borski believed it covered the specific situation referred to in the testimony of Floyd Brosam as to his original request for coverage from Darrell Eaton. Even more could be inferred from Duane Borski's letter of August 17, 1960, and that is that the normal farm liability policy of Employer's Mutual Casualty Company covered the specific type of situation here involved.

Until the letter of September 2, 1960, from the claim supervisor, the insured, the agent and the agent's apparent superior all believed the specific situation requested by the insured was covered.

The policy issued September 1, 1960, covering both the carpentry operation and farm, bears number 4192015 and it is stated to be a rewrite of 4236721. The engineering report dated August 24, 1960, refers to policies 4236721 and 4200864. Neither the memo of June 27, 1960, from Darrell G. Eaton to Duane Borski, nor any policy bearing number 4200864 was introduced in evidence or in any way accounted for. On August 17, 1960, Duane Borski's office couldn't locate any coverage at all.

Plaintiffs state that the exhibits above referred to came to plaintiffs from defendant's attorney as a result of a motion to produce. This is not controverted.

196

We believe it to be a fair inference for the trial court that an agent writing to a company office for confirmation of coverage would know that he was writing to someone in authority in respect to the inquiry.

There are times when one having the facts within his possession is bound to come forward with evidence to avoid the effects of a prima facie case.

There is certainly ample evidence that all the persons representing the company who would normally handle the transaction of assuring temporary coverage believed that the specific situation was covered. The weight of the evidence is that the issued policy was the mistake, and not that the understanding between the parties who would normally handle the situation was a mistake.

Neither is there any evidence to contradict Mr. Borski's assertion that all farm liability policies would cover this situation. The written engineering report indicated that D. Rundquist, engineer, thought the situation was covered.

 We hold that there was evidence from which the trial court could probably find that the defendant insurance company, through its authorized agents, held out to the plaintiffs that they were insured in reference to the specific situation in which the loss occurred, that there is no evidence whatsoever that such coverage was not normal or could not have been written or was not covered by the premium paid. The Circuit Court was justified, from the evidence, in finding that the policy as written did not express the intent of the parties and should be reformed as provided in the decree.

The plaintiffs give notice of cross-appeal from the judgment of the Circuit Court denying plaintiff's claim for $1,000 attorney's fees in defending the suit by Neal

Strole, and in denying assessment of $500 damages for vexatious delay.

■ There is no evidence in this record of the actual cost of defending the law suit of Neal Strole. It is stated that plaintiffs agreed to pay $1,000 attorney's fees. The minimum requirement where the fees have not been paid would be proof of the reasonable charges for such defense. The trial court had nothing before it on which to base a finding of damages.

As to the claim of vexatious delay, the first three complaints were dismissed upon apparently proper grounds. Upon the record, we believe that there has been no showing of vexatious delay.

The decree of the Circuit Court reforming the insurance policy and the judgment of the court in favor of the plaintiffs against the defendant in the amount of $2,525.60, and the judgment of the court denying plaintiffs' claim for $1,000 attorney's fees and $500 for vexatious delay under sec 767, ch 73, Ill Rev Stats, 1963, are all affirmed.

Affirmed.

SMITH, P. J. and CRAVEN, J., concur.