GREAT PLAINS RESOURCES, INC., *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF BENTON *et al.*, Defendants-Appellants.

Fifth District   No. 5—83—0858

Opinion filed September 19, 1984.

Gerald D. Owens, of Benton, for appellants.

Raymond J. Gengler, of Gengler & Gengler, of Denver, Colorado, and Howard & Howard, of Mt. Vernon (G. W. Howard III, of counsel), for appellees.

JUSTICE HARRISON delivered the opinion of the court:

Appeal is taken from a declaratory judgment of the circuit court of Franklin County in which the court found a city ordinance regulating the drilling of oil wells violative of the constitutions of the United States of America and the State of Illinois. The issue presented is whether the judgment was contrary to law or the manifest weight of the evidence before the trial court.

Chapter 28 of the Revised Code of the city of Benton governs the licensing and regulation of gas and oil wells. The following sections are the subject of this action: section 28—1—9, concerning license fees and royalty payments; sections 28—1—3(A) and 28—2—3, concerning the number and spacing of wells; and section 28—1—12, concerning who may apply for a drilling permit.

Although the constitutionality of section 28—1—12 is discussed in the parties' briefs, the discussion has the effect of nullifying the issue. Section 28—1—12 requires that one who applies for a drilling permit must either own the property upon which the well will be placed or lease the property from the owner. The trial court presumed the term "owner" to refer to the owner of the surface land, and not to the owner of the mineral rights. The court reasoned that requiring such consent of one who possessed no interest in the subject of the drilling constituted "an unconstitutional taking of property in effect forcing the driller to 'pay off' the landowner who owns no part of the minerals." The record is void of evidence suggesting that defendant intended the term "owner" to refer to the owner of surface property, and defendant asserts in its brief that the term refers to the owner of mineral rights. Plaintiffs assert in their brief that if the term "owner" refers to the one who possesses mineral rights, plaintiffs have no interest in the court's adjudging section 28—1—12 unconstitutional. Thus, that portion of the court's order declaring section 28—1—12 unconstitutional is not at issue in this appeal.

Sections 28—1—3(A) and 28—2—3 contain the following provisions:

"28—1—3 *PERMITTED WELLS: DRILLING BLOCKS.*

(A) Not more than one (1) well for oil or gas shall be drilled to and completed in any sand, stratum, or horizon productive of

oil and/or gas in the following drilling block:

(1) Drilling block numbered 1 \*\*\*."

"28—2—3 *WELL LIMIT TO PARTICULAR STRATUM.* Not more than one (1) well for oil or gas shall be drilled to or completed in any sand, stratum, or horizon productive of oil or gas or oil and gas in any one of the drilling blocks mentioned as defined in Section 28—2—2 of this article and comprising the area mentioned in Section 28—2—1 of this article, provided, however, that if more than one (1) well shall be drilled outside the area mentioned in Section 28—2—1 and within four hundred feet (400') of the boundary of any drilling block, one (1) additional well may be drilled in such drilling block to the sand, stratum, or horizon to which such well outside the area is drilled, which additional well shall be drilled at a location not more than three hundred feet (300') from the limit line of the area to offset the additional well or wells that shall be so drilled on the land situated outside the area."

■■ ■ The trial court found that "[s]ections 28—1—3(A) and 28—2—3 are unlawful mainly because there is no valid reason for such a rule and, therefore, is not a valid exercise of the City's police power [*sic*]." This conclusion—*i.e.*, that the spacing requirements of the ordinance are arbitrary—could reasonably have been based on the evidence presented at trial. Plaintiff L.L. Tuck testified that the requirements constituted "a wasteful type of order in that it would require you to drill more wells than needed in order to comply with the ordinance." Defendant pursued minimal cross-examination on this subject and presented no evidence to rebut Mr. Tuck's testimony. It is not the function of the appellate court to pass upon legal questions in an abstract sense, but rather to determine whether the decree of the circuit court is contrary to law or contrary to the manifest weight of the evidence. (*Brosam v. Employers Mutual Casualty Co.* (1965), 61 Ill. App. 2d 183, 190, 209 N.E.2d 350.) Based upon the evidence presented at trial, the circuit court could reasonably have concluded that the requirements of section 28—1—3(A) and 28—2—3 were arbitrarily drawn.

Section 28—1—9 contains the following provision:

"28—1—9 *OIL WELL DRILLING — APPLICATION DEPOSIT.* Every application for a permit to drill an oil or gas well shall be in writing, signed by the applicant or some person duly authorized to sign the same in behalf of the applicant, and shall be filed with the City Clerk and be accompanied by a deposit of Three Thousand Dollars ($3,000.00), in cash and a duly exe-

cuted instrument in writing effective to assign to the City a ¹⁄₃₂ of ⁷⁄₈ working interest as an overriding royalty, free and clear of all costs, in and to any oil or gas which might be produced from such well."

The trial court found that "the deposit of $3,000.00 plus a ¹⁄₃₂ overriding interest bears no relation to the City's administrative costs and constitutes a confiscation of property." These provisions, the court reasoned, violated the due process and equal protection clauses of the Federal and State constitutions. (U.S. Const., amend. XIV, sec. 1; Ill. Const. 1970, art. 1, sec. 2.) We consider first the question of due process.

■ While the powers of a municipal corporation to regulate activities and impose taxes are distinct, each power may be exercised by imposing a license fee. (*Arends v. Police Pension Fund* (1955), 7 Ill. 2d 250, 253, 130 N.E.2d 517.) The Illinois Constitution, however, expressly prohibits home-rule units from licensing for the purpose of raising revenue unless authorized to do so by statute (Ill. Const. 1970, art. VII, sec. 6(e)), and provides that non-home-rule units shall possess only those powers granted to them by law (Ill. Const. 1970, art. VII, sec. 7). While the record fails to establish whether the city of Benton is a home rule or non-home-rule unit, the city is in either case prohibited from "licensing for revenue"—*i.e.*, raising revenue by the exercise of its police power (*Rozner v. Korshak* (1973), 55 Ill. 2d 430, 433, 303 N.E.2d 389)—since there is no act of the general assembly enabling the city to employ such authority. Defendant's power to regulate the drilling of oil within the municipality is granted by section 11—56—1 of the Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 11—56—1), which states:

"The corporate authorities of each municipality may grant permits to mine oil or gas, under such restrictions as will protect public and private property and insure proper remuneration for such grants."

■ The question, then, is whether the license and royalty fees imposed by defendant upon plaintiff bear a reasonable relationship to the costs of regulation and administration, or whether the fees are so excessive that they may be deemed arbitrary and unreasonable as a matter of law. *Quad Canteen Service Corp. v. Ruzak* (1980), 85 Ill. App. 3d 256, 258, 406 N.E.2d 616.

Defendant maintains that the license and royalty fees are necessary in order to ensure public safety. Mr. Paul A. Rogers, fire chief of the city of Benton, testified that the area underlying Benton contained abandoned coal mine shafts, and the activity of drilling oil

within the city limits created a risk of fire as a result of the drilling apparatus penetrating pockets of methane gas. Mr. Rogers stated that the city fire department would be unable to extinguish such a fire without additional equipment, the cost of which Mr. Rogers estimated at $337,000. Mr. Rogers stated that the city would be unable to purchase such equipment without a special source of funds. On cross-examination, Mr. Rogers testified that neighboring fire departments possessed some of the items the city considered essential to extinguish oil well fires, and that Benton had access to this equipment.

Plaintiff L.L. Tuck testified that he had been engaged in all aspects of the oil business for a period of 40 years, during which he had acquired extensive experience with oil well fires. According to Mr. Tuck, the standard mode for extinguishing a methane gas fire would involve the use of explosives by expert personnel. Mr. Tuck stated that equipment of the type sought by the city would be actually be ineffective against a methane gas fire. (Mr. Rogers had previously testified that he had personal experience with only one oil well fire resulting from methane gas, and that the fire had been extinguished by the use of explosives.) Mr. Tuck testified that, within eight hours after a fire would be ignited, expert personnel would be available to extinguish such a fire by explosion. Mr. Tuck also testified that the area of Benton in which the proposed drilling would take place was a vacant lot safely removed from human structures.

■ The reasonableness of the costs of defendant's regulation in relation to the fees imposed upon plaintiff thus rested upon a determination of whether the additional firefighting equipment was necessary to protect the public and private property of the municipality. This determination was, in turn, dependent upon a resolution of conflicting expert testimony. In light of the testimony of Mr. Tuck, the trial court could reasonably have determined that the equipment characterized by defendant as essential to the public safety was not only nonessential, but extraneous. In such a situation the license and royalty fees required of plaintiff would properly be deemed excessive as a matter of law, and section 28—1—9 a veiled attempt to exact by means of the city's police power revenue which could not, under Illinois law, be exacted by means of a tax. (*Cf. City of Hartshorne v. Marathon Oil Co.* (Okla. 1979), 593 P.2d 97.) The finding of the trial court in this regard was neither contrary to law nor against the manifest weight of the evidence. This conclusion renders unnecessary a consideration of whether the trial court was correct in determining that section 28—1—9 also violated plaintiff's constitutional right to equal protection of the laws.

The judgment of the circuit court is affirmed.

Affirmed.

WELCH, P.J., and KARNS, J., concur.